[S. F. No. 1757.  In Bank.—July 1, 1904.]

EDSON F. ADAMS et al., Appellants and Respondents, v.
    EMILY B. HOPKINS et al., Respondents, and SARAH
    A. WILSON et al., Appellants.

PARTITION — MEXICAN GRANT — PATENT — STATUTE OF LIMITATIONS. —
    Where a suit for the partition of a patented Mexican grant was
    brought within five years after the issuance of the patent, the plain-
    tiffs' action was not barred by the statute of limitations when the
    suit was commenced.  The four years' statute of limitations has no
    application to such a suit; and the only sections applicable thereto
    are section 318 of the Code of Civil Procedure, requiring seizin or
    possession within five years before the commencement of the action,
    and section 1007 of the Civil Code, regulating title by prescription.

ID.—APPLICATION OF STATUTE.—The statute never bars relief in an action
    for partition as between tenants in common; and it is only where
    a party has by operation of the statute of limitations lost all right
    to the land, and such right has by prescription become vested in
    another, that the statute of limitations applies in such an action.
    The statute may be resorted to in such an action so far as it
    establishes an interest in the property.

ID.—EFFECT OF AMENDMENT OF COMPLAINT—ADDITION OF NEW LANDS.—
    An amendment of the complaint adding new lands, as to which
    the statute of limitations has run, will make the statute applicable
    as to parties brought in who plead the statute in relation to the
    lands so added; but such amendment cannot have the effect to
    change the cause of action as to lands included in the original
    complaint, or to change the effect of the running of the statute
    as to such lands as to any of the parties, including those brought
    in by the amendment.

ID.—FINDINGS AS TO STATUTE.—It was not necessary for the court to
    find specifically whether there had been an ouster of their cotenants
    on the part of those who successfully pleaded the statute of limi-
    tations.  The finding of the ultimate fact that the statute had
    run in their favor was all that was necessary.

ID.—LANDS INCLUDED IN ORIGINAL COMPLAINT.—The law does not require
    the whole of a Mexican grant to be included in a partition suit.
    All that is required is that the land sought to be partitioned comes
    within the description given in section 752 of the Code of Civil
    Procedure.  The plaintiffs' action is for the benefit of all persons
    interested in the property included in the original complaint, and
    all are actors as to such lands from the commencement of the suit.

ID.—TRIAL OF RIGHTS OF ADVERSE CLAIMANTS.—The rights of adverse
    occupants of lands may be put in issue, tried, and determined in an
    action for partition.

ID.—DEATH OF PLAINTIFF—SUBSTITUTION OF EXECUTORS—AMENDMENT INCLUDING HEIRS.—If there was error in substituting the executors upon the death of a deceased plaintiff, instead of his heirs, it was cured by an amendment bringing in the heirs. The court did not lose jurisdiction of the case by substitution of the executors.

ID.—APPEARANCE AND PLEADING—WAIVER OF DEFECTS IN SUMMONS AND SERVICE.—The voluntary demurrers and answers of defendants to the complaint were equivalent to the due service of summons; and they thereby waived all right to take advantage of any defect in the issuance, service, and return of the summons. Defendants appealing cannot avail themselves of defects in the service of summons on other defendants.

ID.—PRIOR RECORD OF LATER DEED—ABSENCE OF NOTICE NOT FOUND—EXCEPTION OF PRIOR GRANT.—The prior record of a later deed of the undivided interest of the grantors will not prevail over a prior deed of a specific tract, where there is no finding that the grantees of the later deed took without notice, and where, though the deed is not in the record, the assertion in the brief of respondent that the former deed is referred to in the latter deed, and the land first conveyed excepted therefrom, is not denied by counsel for appellants.

ID.—CONSTRUCTIVE FRAUD — SETTLEMENT — STALE CLAIM — STATUTE OF LIMITATIONS.—Though the original deed of the grant to original grantees might have been held constructively fraudulent in view of the relations between the parties, yet it cannot be disturbed on ·that ground where there was a settlement and release of all controversies and claims between the grantors and grantees and their successors in interest, and where the fraud is barred both as a stale claim and by the statute of limitations.

ID. — DEED BY GRANTEES TO GRANTORS — MORTGAGE — TITLE LEFT IN GRANTEES.—A deed by the original grantees to the original grantors, which shows by its recitals that it was intended to secure the payment of money to the grantors, leaves the title in the grantees, and is in legal effect a mortgage creating only a lien which could only be enforced by judicial proceedings; and where the parties recognized and treated it as a mortgage, and it was settled and released as such, the construction of the parties as to their own act may be looked to for the purpose of relieving any doubt as to the nature of the transaction.

ID.—FINDING AS TO SETTLEMENTS—QUESTION OF FRAUD.—Where the court found that a settlement was made of all claims and controversies between the grantors and grantees, and subsequent grantees, which was carried into effect by a release of the mortgage and an acknowledgment of satisfaction thereof, and by deeds pursuant to the settlement, the finding is sufficient; and it was not necessary to find specially upon the question of constructive fraud in the original deed, which was in effect disposed of by the settlement.

ID.—EVIDENCE—RECORD OF RELEASE.—The record of the release of the mortgage contained in the official records of the county was properly introduced without accounting for the original, where the trial was had after the amendment of 1889 to section 1951 of the Code of Civil Procedure.

ID.—ASSIGNMENT OF MORTGAGE SUBSEQUENT TO RELEASE—NOTICE OF RELEASE—RECORD OF RELEASE BY ATTORNEY IN FACT.—The assignment of a mortgage made subsequent to a written release thereof by the mortgagee is subject to all existing equities between the parties, and the assignee can stand in no better position than his assignor, and it is immaterial whether the assignee had notice of the release, or whether a power of attorney given by one of the mortgagees who executed a release by his attorney in fact was properly recorded, where the release itself was properly recorded in pursuance of the power. The power of attorney to make the release did not require record.

ID.—POWER TO RELEASE MORTGAGE—DESCRIPTION OF AMOUNT NOT A CONDITION.—The designation in the power of attorney authorizing the release of the mortgage for forty thousand dollars on the Sobrante was merely descriptive of the mortgage, and was not intended to make the payment of that sum a condition of the release.

ID.—CONSIDERATION OF RELEASE—PRESUMPTION.—It will be presumed that there was a good consideration for the written release in the absence of evidence to the contrary; and the court is not bound to believe an interested witness as against such presumption, if the latter satisfies his mind.

ID.—DEED—EXCEPTION AND RESERVATION OF "LANDS BEFORE CONVEYED" —REASONABLE CONSTRUCTION—LANDS SOLD—EQUITABLE TITLES.—A deed excepting and reserving therefrom "all lands which have been heretofore conveyed," should not be understood in the technical sense of the words, but rather in their ordinary and popular sense; and the reservation should be construed in favor of the grantor, and so as to make the contract lawful and reasonable, and to except and reserve lands previously sold and held under equitable titles.

ID.—INTEREST OF ATTORNEY—CONSTRUCTION OF CONTRACT.—An agreement with an attorney to prosecute the Mexican grant to final confirmation or rejection, and to receive for his service "one-tenth part thereof, less six hundred and forty acres," is to be construed as intending that the six hundred and forty acres shall come out of the attorney's tenth after division, and not out of the whole grant before division.

ID.—ERROR NOT SHOWN BY RECORD.—A complaint by an appellant as to an erroneous decision of the court, in respect of which he makes no citation from the record, and which does not appear to be sustained by the record, so far as the court can discover, will be deemed without support in the record.

ID.—CONSTRUCTION OF DEED—INCONSISTENT DESCRIPTION.—A deed of the undivided half of all the interest of the grantor in the grant will be construed to apply only to such half interest, notwithstanding a subsequent mistaken designation "meaning to convey ¾ of ¹⁄₂₀ of said rancho less 320 acres," which is descriptive of his whole interest therein, it being evident from the whole language of the deed that it was carelessly drawn, and that there were omissions therein.

ID.—QUALIFIED GRANT OF UNDIVIDED INTEREST—CONSTRUCTION OF DEED.—Where the attorney who had originally one-tenth interest, less six hundred and forty acres, had left six hundred and seventy-three acres undivided of his original interest in the Sobrante, and made a deed of gift of his interest in three hundred and twenty acres of land *to be taken out of his present interest, but not to be taken where the attorney or any of his tenants* "are in possession in said grant," the right sold being "an undivided one," is not to be construed as a grant of three hundred and twenty acres undivided of said six hundred and seventy-three acres, but is to be construed as granting only his proportionate interest in the number of acres mentioned, and as equivalent to eighteen and five-hundredths average acres of land in the whole of the Sobrante.

ID.—QUITCLAIM OF UNDIVIDED INTEREST.—A deed purporting to quitclaim "all the interest of the grantor in and to fifty acres of the Sobrante undivided," conveyed only his interest in fifty acres and not fifty acres of the undivided interest of the grantor.

ID.—DEED OF LAND NOT IN SOBRANTE.—A deed of a tract of six hundred and forty acres, purporting to be a part of the Sobrante, but attempting to describe it by metes and bounds, showing that it was never any part of the Sobrante, cannot operate as a conveyance of an undivided interest in the Sobrante.

ID.—DEED OF UNDIVIDED INTEREST.—A deed of all the right, title, and interest of the grantor to one and one-half square miles of land, being part of the Sobrante, but located too indefinitely, conveys an undivided interest of that quantity of land in the Sobrante.

ID.—DEDUCTION OF LAND BARRED BY LIMITATION—SUFFICIENCY OF FINDINGS—CONCLUSIONS OF LAW.—Lands barred by the statute of limitations were properly deducted from the quantity of land so conveyed and charged proportionately to the owners of undivided interests therein who had not conveyed their interests. Findings of the ultimate facts showing such bar are sufficient, though placed in the conclusions of law.

ID.—JUDGE MADE A PARTY, WHEN NOT DISQUALIFIED—DISCLAIMER OF INTEREST.—A judge of this court who was made a nominal party to the partition suit, but who filed a disclaimer of all interest therein, is not disqualified to pass upon the issues between the litigating parties.

APPEALS from an interlocutory judgment in partition of the Superior Court of Contra Costa County. Joseph P. Jones, Judge.

The facts are stated in the opinion of the court.

Charles E. Wilson, and John R. Glascock, for Edson F. Adams et al., Plaintiffs, Appellants, and Respondents.

John O'B. Wyatt, for Sarah A. Wilson, Defendant, Appellant.

Philip G. Galpin, and Garoutte & Goodwin, for Victor Castro and his Executrix, substituted, Defendant, Appellant.

R. H. Countryman, for Joseph Wohlfrom et al., Defendants, Appellants.

John Reynolds, Rodgers & Paterson, and J. B. Mhoon, for Elizabeth Rodgers et al., Defendants, Appellants.

John Reynolds, for J. Reynolds and C. F. Reynolds, Defendants, Appellants.

Sam Bell McKee, for Henry Pierce, Defendant, Appellant.

Robert C. Porter, and W. S. Tinning, for Bernardo Fernandez, Defendant, Appellant.

J. B. Mhoon, and John Reynolds, for J. B. Mhoon and J. E. McElrath, Defendants, Appellants.

Clinton C. Tripp, and W. T. Baggett, for C. C. Tripp and D. K. Tripp, Defendants, Appellants.

E. H. Rixford, for Samuel B. Welch et al., Respondents.

E. W. McGraw, for Emily B. Hopkins and Alameda Water Company, Respondents.

A. B. McKenzie, and H. V. Alvarado, for W. J. McLane, Executor, etc., et al., Respondents.

James D. Thornton, for Thornton Claimants, Respondents.

Gordon & Young, for Belmore F. Brisac, Respondent.

George W. Haight, for Susan Brensel et al., Respondents.

Charles S. Peery, for California and Nevada Railroad Company, Respondent.

W. S. Tinning, for Andrew Abrot et al., Respondents.

Stanly, McKinstry, Bradley & McKinstry, for P. W. Riordan, Respondent.

A. Everett Ball, for W. W. Haskell, Respondent.

Myrick & Deering, for Lewis H. Bailey et al., Respondents.

William H. Chapman, for W. H. Chapman et al., Respondents.

J. C. Bates, for Harriet E. Carlton et al., Respondents.

Donald Y. Campbell, for Donald Y. Campbell et al., Respondents.

John B. Mhoon, for Rose Borland et al., Respondents.

Sawyer & Burnett, for Aloysius Varsi, Executor, etc., Respondent.

H. A. Powell, for Henry L. Bufford et al., Respondents.

A. E. Bolton, for A. E. Bolton et al., Respondents.

John L. Boone, for Samuel G. Beatty, Administrator, etc., et al., Respondents.

Joseph H. Moore, for William Minto, Respondent.

Isaac Frohman, for Henry Miller, Respondent.

W. S. Goodfellow, for German Savings and Loan Society, Respondent.

Arthur G. Fisk, for Asa Fisk, Respondent.

Edgar M. Wilson, for Mary A. Bosman et al., Respondents.

G. W. Bowie, for James Mills, Respondent.

A. B. McKenzie, for Elizabeth Muir et al., Respondents.

M. C. Chapman, for Simpson & Fallon, Respondents.

Davis & Hill, for William Jacobs and John Ludeman, Respondents.

C. Y. Brown, for Contra Costa County et al., Respondents.

R. H. Latimer, for Francis W. Gunter, Administrator etc., Respondent.

William H. H. Hart, for Abbie T. English et al., Respondents.

Fitzgerald & Abbott, for Hugh B. McAvoy, Executor etc., et al., Respondents.

A. H. Griffith, for Julius Rayer et al., Respondents.

Stephen L. Sullivan, for Mary Havey et al., Respondents.

Theodore Wagner, for Theodore F. Andrews et al., Respondents.

Reed & Nusbaumer, for John K. Bell et al., Respondents.

W. H. Waste, for Francis Jucksh, Respondent.

H. Miller, Theodore H. Hittell, J. E. McElrath, W. B. Tyler, G. H. Cabaniss, G. W. Bowie, Eli R. Chase, W. H. Tyler, Louis H. Sharp, C. J. Brown, Henry E. Highton, M. G. Cobb, Sidney V. Smith, Mastick, Belcher & Mastick, R. W. Hent, M. M. Estee, and Henry E. Monroe, for various Defendants, Respondents.

THE COURT.—This suit was brought for the partition of the tract of land known as the Sobrante, granted to Juan José Castro and Victor Castro by the Mexican nation, April 22,

1841, and patented August 11, 1883, for 19,982.49 acres. The appeals are from the interlocutory judgment, and (some of them) from orders denying a new trial. The original complaint was filed July 31, 1888; the amended complaint, February 19, 1894. The original plaintiff was Edson Adams, who died December 14, 1890. The present plaintiffs have succeeded to his title under his will, and under that of Hannah J. Adams, one of his legatees.

The original complaint excluded from the land sought to be partitioned six segregated tracts, forming part of the grant. These were afterwards included in the amended complaint, and are referred to in the findings and interlocutory judgment as "Specific Tracts" A, B, C, D, E, and F. As to all of these it was found by the court that the cause of action was barred by the statute of limitations; and they were accordingly allotted to the parties in possession. No question is made as to these allotments, except in so far as they affect other questions, in connection with which they will be considered. Otherwise they may be regarded as eliminated from the case. Besides these there were some other specific allotments—aggregating, with the others, 11,165.79 acres. The remainder of the grant, containing 8,816.70 acres, is referred to in the interlocutory judgment as the "Surplus Sobrante."

The several appeals may be arranged for convenience of consideration in the following order: 1. The appeals of Wohlfrom and others, relying (mainly) on the statute of limitations; which will be considered under the head of "Settlers Case"; 2. The appeals of Victor Castro and the defendant Tripp, contesting the title of the plaintiffs, and of others deraigning title under the same conveyances, which will be considered under the head of the "Victor Castro Claim"; 3. The appeals of Fernandez, Wilson, and the plaintiff, affecting (as expressed by the attorneys) the "John Wilson Title"; 4. The appeals of Rodgers, Reynolds, Mhoon, and McElrath, affecting the "Ann R. Wilson Title"; and 5. Appeals affecting the "Franklin Title."

1. *The Settlers Case.*—The appellants referred to under this head (with the exception of two) claimed and were allowed a small undivided interest in the "Surplus Sobrante"; but they claim they should have been allowed the interest (323 acres) allotted to Emily B. Hopkins. They claim also, ad-

versely to the title, by adverse possession and the statute of limitations. The decision, it is claimed, should have been in their favor on the statute of limitations. Other errors are urged; but the main contention is as to the statute; and to this our attention will first be directed.

The appellants in question appeared and answered the original complaint, which was filed July 1, 1888, within five years after issue of the patent, August 11, 1883. The plaintiffs' action was therefore not barred at the time the suit was commenced. On this point the law is too well settled to admit of discussion. (*Anzar* v. *Miller,* 90 Cal. 344, 345, and cases cited; *Valentine* v. *Sloss,* 103 Cal. 221, 222; *Tuffree* v. *Polhemus,* 108 Cal. 670.) What was said by the court in *Emeric* v. *Alvarado,* 64 Cal. 608, 609, referred to a survey approved by the district court under the act of Congress of June 14, 1860, under which plats approved as prescribed by the act were made equivalent to a patent. It has no application to the present case. In *Reed* v. *Ybarra,* 50 Cal. 467, it was held that even where there had been a survey thus approved, the statute commenced running only with the issue of patent.

But appellants contend that section 343 of the Code of Civil Procedure prescribing a four-year limitation of actions applies to the case. The statute of limitations never bars relief between tenants in common in an action of partition. (Knapp on Partition, 193.) It is only where a party has by operation of the statute of limitations lost all right to and in the land and such right has by prescription become vested in another, that the statute of limitations cuts any figure in a partition case. Of course, if one has no interest left in the property, he cannot have partition. The only sections of our codes, then, that could have any application to the case are section 318 of the Code of Civil Procedure and section 1007 of the Civil Code, the former requiring seizin or possession within five years before the commencement of the action as a necessary condition of the right to maintain the action for the recovery of real estate; and the latter providing that occupancy for the period prescribed by the former section (five years) confers title by prescription. The facts do not bring the case within this five-year statute, and the four-year statute in no way applies.

There is no foundation for the complaint that the decision of the trial court as to the statute of limitations was inconsistent and unfair as applied to the interests of the several parties to the suit. These appellants were parties to the original complaint and their lands were expressly included therein. The lands of the defendants whose titles by adverse possession were upheld were expressly excluded from the original complaint and were brought in subsequently after the five-year statute of limitations had run in their favor. The statute of limitations is a positive rule of law, and the courts must, when it is pleaded, be governed by it where it applies, and where it does not apply it must be so held. Had these appellants, instead of waiting for the statute to run in their own favor, commenced a suit for partition against all the parties interested within the time allowed by law, they would not now be complaining of the unfair and inequitable operation of the statute. They might have commenced such an action after the patent issued at any time before this action was begun. It is said that an effort was made in this action to have these parties who were finally given the benefit of the statute brought into the action. Our attention, however, is not called to any objection made to the action of the court or any exception taken or implied or any specification in this connection that can be here reviewed; and we have not been able to find anything of that kind in the record.

It was not necessary to find specifically whether there had been an ouster of their cotenants on the part of these parties who successfully pleaded the statute of limitations. The finding of the ultimate fact that the statute had run in their favor was all that was necessary, and if an ouster were necessary to set the statute in motion the ouster would be implied from the finding of the ultimate fact of the running of the statute. It is clear that the statute of limitations may be resorted to in an action of partition so far as it establishes interests in the property. And this is in no way inconsistent with the general rule that the right of action for a partition of the property between tenants in common is not barred by the lapse of time. What is here said as to the statute of limitations is intended as a full reply to the contention of each and all the appellants along that line.

The case was not affected by the amendment to the com-

plaint. The allowance of the amendment was within the discretion of the court, and there was no new cause of action. The change was simply in the inclusion of the specific tracts omitted in the original complaint. As to the rest of the lands the cause of action remained the same; nor were the defendants, as adverse occupants, in any way affected by the change. We have no doubt of the sufficiency of the original complaint. There is nothing in the law that requires the whole of a Mexican grant to be included in a partition suit. All that is required is that the land sought to be partitioned comes within the description given in section 752 of the Code of Civil Procedure. The plaintiffs' cause of action was therefore not barred. Nor after the commencement of the action did the statute run as to other parties. The plaintiffs' action is for the benefit of all persons interested in the property included in the complaint and all are actors from the commencement of the suit. (Code Civ. Proc., secs. 382, 753, 759.) The case is substantially the same as that of a creditor's bill; where it is held that a creditor, proving his claim, "becomes a complainant by relation to the time of the filing of the bill." (*Richmond* v. *Irons,* 121 U. S. 51 et seq., and cases cited. See, also, *Sterndale* v. *Hankerson,* 1 Sim. Ch. Rep. 398-400.)

Other objections are: That the rights of these defendants, as adverse occupants, could not be determined in this case; that, at all events, on the question of title, the defendants were entitled to a jury trial; that on the death of the original plaintiff the court lost jurisdiction of the case by reason of the substitution of the executors of deceased instead of his heirs; that the case should be dismissed for failure to serve and return summons, etc. But none of these objections are tenable. With regard to the first, it is settled in this state that the rights of adverse occupants of land sought to be partitioned "may be put in issue, tried, and determined in such action." (*De Uprey* v. *De Uprey,* 27 Cal. 335;[1] *Gates* v. *Salmon,* 35 Cal. 597, 598;[2] *Martin* v. *Walker,* 58 Cal. 597; *Jameson* v. *Hayward,* 106 Cal. 687.[3]) Indeed in the partition of large tracts of land it would otherwise be impracticable to proceed. Whether in such case parties in possession claiming adversely to the title under which partition is sought are entitled to a

[1] 87 Am. Dec. 81.                    [3] 46 Am. St. Rep. 268.

[2] 95 Am. Dec. 139.

jury trial is an interesting question, but one that it will be unnecessary to consider. In this case the claims of the defendants rest exclusively on adverse possession and the statute of limitations or the doctrine of prescription; but these claims, as appears from what has already been said, are on the admitted facts untenable, and there was therefore no issue with regard to them to be tried.

That these appellants were not entitled to the benefit of the statute of limitations can be determined from an inspection of the pleadings. The date of the patent was given in the original as well as in the amended complaints, and the answers of these appellants to the second amended complaint upon which the action was tried did not deny that date. The date of filing the original complaint was less than five years after the date of the patent. Nothing was put in evidence that could throw any light upon the defense of the statute of limitations except the patent. At the very time that the jury was demanded the admissions of the pleadings disclosed that the statute of limitations had not run in favor of these appellants as against the plaintiffs.

The other objections are equally untenable. If there was error in substituting in the case the executors of the deceased plaintiff, it was cured by the subsequent amendment. With regard to the summons, that was issued within the year. The motions to dismiss for defects in the issuance, service, and return of summons, and on account of its amendment, were properly denied because these appellants had prior to the making of said motion each and all answered the original complaint as well as the amended complaint. Their original appearance in the case was also made within three years after the action was begun. The court, then, had jurisdiction of their persons by reason of their appearance, and it was immaterial, as to them, whether any summons had been served or returned. The voluntary demurrers and answers to the complaint were equivalent to the due service of the summons. (Code Civ. Proc., sec. 416.) They had thereby waived all right to take advantage of any defect in the service or return of summons. (*Cooper* v. *Gordon,* 125 Cal. 296.) Nor can the appellants avail themselves of defects in the service of summons on other parties. (*Peck* v. *Agnew,* 126 Cal. 609.)

With regard to the interest allotted to Emily B. Hopkins,

both she and the appellants deraigned title under deeds to their respective predecessors in interest from the same grantors—Hatch, Branagan, Brown, and Coleman; the deed to the former, of date February 29, 1877, being for the two hundred and thirty-two acres in question; the deed to the latter, of date March 12, 1877, being for the undivided interest of the grantors in the Sobrante. The former deed was not recorded until October 10, 1878, more than a year after the record of the latter; but there is no finding that the grantees in the latter deed took without notice. (Civ. Code, secs. 1214, 1217; *Beattie* v. *Crewdson*, 124 Cal. 579.) The deed itself is not in the record, but it is said in the brief of the respondent that the former deed is referred to in the latter, and the two hundred and thirty-two acres conveyed expressly excepted; and we see no denial of this in the appellants' brief.

2. *The Victor Castro Claim.*—The question here involves the original title of Victor Castro as one of the two grantees of the Sobrante. The plaintiffs' interest is deraigned from two sources: The one is a deed from Victor Castro and Juan José Castro, of date November 23, 1853, to John B. Frisbie and Ramon de Zaldo, purporting to convey to the grantees all the lands embraced in the grant except lands previously conveyed. The other, a sheriff's deed to A. Mhoon and Edson Adams (the original plaintiff), made in pursuance of a sale of date December 20, 1856, under a judgment foreclosing a mortgage made by Castro to Mhoon and Adams, July 22, 1853. The plaintiffs' deraignment of title under these deeds is not disputed. If the validity of the former be assumed, it will be observed, the title conveyed was not affected by the foreclosure deed—the grantees in the former deed not having been made parties to the suit; and it will therefore be unnecessary to consider it. The deed from the Castros to Frisbie and de Zaldo will, therefore, first demand our attention. Contemporaneously with this, a deed was executed by Frisbie and de Zaldo to the Castros reciting the former deed, and that it was made in consideration of an agreement by the grantees to pay to the grantors forty thousand dollars to be realized from sales to be made, and not otherwise chargeable to them, and purporting to reconvey the land to the Castros for the purpose of securing the said sum of forty thousand dollars. The position of the appellant rests upon the alternative contentions that

the effect of the two deeds was to leave the title still in the Castros, and, if this be not the case, that the relations of the parties and the circumstances of the case were such as to make the transaction constructively fraudulent.

With regard to the latter claim, were the case a new one, and unaffected by subsequent transactions, the contention of the appellant might easily be admitted. But it is found by the court that by an agreement subsequently made between Victor Castro and Juan José Castro, Frisbie and Vallejo (a grantee of de Zaldo), and Adams, and other grantees of Frisbie and de Zaldo, a settlement was made of all claims and controversies between the parties, relating to the Sobrante; and that this agreement was carried into effect by a written release of the mortgage by Victor, of date April 1, 1857, and an acknowledgment of satisfaction by Juan José, of date April 13, 1857, and by the deeds to Adams, Carpentier, and Hepburn, of April 13, 1857, and to Victor Castro, of September 11, 1858—the deeds referred to covering the whole or nearly the whole of the ranch. This—assuming that the deed from the Castros to Frisbie and de Zaldo passed the legal title—must, as found by the court, be taken to be a settlement and release of the Victor Castro claims. Were it otherwise, we should have to regard these claims of fraud as barred—both as stale, and under the statutory limitation—by the time that has elapsed since the facts arose which are claimed to constitute the fraud.

As to the legal effect of the deed from the Castros to Frisbie and de Zaldo, and the accompanying deed, claimed by the appellant to be a reconveyance, and by respondent to be a mortgage, the case seems equally clear. The language used in the latter instrument has always, both here and elsewhere, been construed to constitute a mortgage; and in this state, under the provisions of section 260 of the Practice Act, enacted April 29, 1851, it has been uniformly held that a "mortgage creates a mere lien for the purposes of security, and, as in other cases of lien upon real property, can only be enforced by judicial proceedings." (*Fogarty* v. *Sawyer,* 17 Cal. 589; 2 Notes on Cal. Rep. 43.) Nor indeed can the provisions be otherwise construed. Its terms are that "a mortgage of real property shall not be deemed a conveyance, whatever its terms, so as to enable the owner of the mortgage to recover possession of the

real property without foreclosure and sale'' (Prac. Act, sec. 260); which is but to say in effect that it shall not be deemed a conveyance so as to pass the title. For title is but ''the means whereby the owner of lands hath the just possession of his property.'' (Coke on Littleton, 349, cited in Bouvier's Law Dictionary, word ''Title.'') The two documents are indeed to be construed together as one contract. But this does not alter the manifest effect of either; and though the words of conveyance be the same in both documents, yet in the one they are to be construed as passing the title; in the other, as merely mortgaging the land. Indeed, that the parties themselves understood that the deed from Frisbie and de Zaldo to Castro was intended as a mortgage and actually constituted a mortgage is evidenced by the recital in the subsequent release executed by Castro in which it is referred to as an ''indenture of mortgage made by John B. Frisbie and Ramon de Zaldo to secure the payment of $40,000,'' etc. In this language reference was made, not to both deeds and not to the whole transaction, but specifically to the ''indenture'' executed by Frisbie and de Zaldo, and it was over the signature of Castro called a ''mortgage to secure,'' etc. Even then, if the construction of the transaction were in doubt, this construction of the parties as to their own act might be looked to for the purpose of relieving the doubt.

Again, it may be properly said that the findings above referred to show that the settlement of 1857 and the several releases and other instruments following it had the effect to settle and end all disputes between the parties and to confirm the title in Frisbie et al. and their grantees as it was conveyed to them by the original deeds of the Castros to Frisbie et al., and to free that title of all encumbrances and conditions. Whatever doubts there may have been as to where the title to the property stood before the execution of these instruments, certainly there should have been no question about it after their execution. Then all questions of want of consideration for the original deed, constructive fraud in its procurement, and the like should have been considered as finally settled and disposed of forever.

It is still contended, however, that the issues made by the Victor Castro claimants as to the effect of the original agree-

ment between Victor Castro and Frisbie and de Zaldo, and as to whether there was any consideration for the original deed by the former to the latter, and also as to fraud in connection with this deed, and as to notice to the subsequent grantees as to these defects in the original deed from Victor Castro, and various other issues in this connection, are not disposed of by the findings. It was, in effect, found, as already stated, that all those matters were disposed of by the settlement of 1857. By reason of that finding all matters affecting the original deed from Castro became immaterial, and it was not necessary that there should be any express findings on the issues indicated. In the language of the finding, the instruments executed in 1857 and 1858 were "in full adjustment and settlement of all claims and demands, the one against the other, or of either against the others, arising or growing out of said Sobrante grant, or any matter or thing relating thereto."

There is no specification of particulars of insufficiency of evidence to support this finding. Indeed, no reference is made to it in any way in Victor Castro's notice of intention to move for a new trial, or in any other specification of particulars wherein the evidence is insufficient, so far as we can ascertain. That it is supported by the evidence is, therefore, not open to question on the record before us.

There is no merit in the objection urged to the admission in evidence of the record of the release by Victor Castro contained in the official books of the records of Contra Costa County, based on the ground that the original was unaccounted for. The trial was had long after the amendment of section 1951 of the Code of Civil Procedure (made in 1889) allowing the introduction of the original record "without further proof." And the same thing may be said of the other similar objections.

*The Claim of C. C. Tripp and D. K. Tripp.*—These appellants claim under an assignment of the mortgage of Frisbie and de Zaldo to the Castros made by the latter to one Saville of date January 27, 1860. This was subsequent to the settlement made by the Castros with Frisbie, Adams, and others, and the release made by Victor Castro in 1857; but it is claimed there was no proof or finding that Saville had any notice of the release. This, however, could make no difference. Saville took subject to all existing equities between the parties, and could stand in no better position than his grantor. (Civ.

Code, sec. 1459.) It will be unnecessary, therefore, to consider the plea of the statute of limitations.

Much of what has been said as to the Castro claim applies with equal force to the Tripp claim, and is an answer to the greater part of the arguments made on the Tripp appeal.

The original mortgage from Frisbie and de Zaldo to the Castros, as we have seen, was extinguished by the subsequent settlement and the written release executed by the Castros in 1857. Hence there is no such mortgage in existence and no necessity for quieting title as against it.                    ᛁ ᛁᛁ

The appellants Tripps also fail altogether to specify any particulars as to wherein the finding as to the settlement and as to the release executed by Victor Castro is unsupported by the evidence. As to these appellants, also, the finding must be taken as true.

The objection to receiving in evidence the power of attorney from J. J. Castro to Hepburn and the release executed by the latter as attorney in fact, for the former, made on the ground that the instruments were not recorded in the proper book, is without merit for the reason that the assignee of the mortgage took no better title than his assignor had. And it was immaterial whether these instruments were recorded at all. A power of attorney to execute a mortgage is required to be recorded. (Civ. Code, sec. 2933.) And it is also provided that previous conveyances are void unless recorded, "as against any subsequent purchaser or mortgagee . . . whose conveyance is first duly recorded." (Civ. Code, sec. 1214.) There is no provision of law, however, requiring that a power of attorney to release a mortgage should be recorded. Section 1215 of the Civil Code reads as follows: "The term 'conveyance,' as used in sections 1213 and 1214, embraces every instrument in writing by which any estate or interest in real property is created, aliened, mortgaged, or encumbered, or by which the title to any real property may be affected, except wills." It was not the power of attorney but the release executed by the attorney that affected the title to real property in this case. It was upon this construction of the section last cited that the legislature deemed it necessary to enact the other section requiring the power of attorney to execute a mortgage to be recorded. There being no statute requiring the power of attorney to be recorded, and the release itself having been

recorded showing that it was executed by an attorney in fact, the appellants and their predecessors were bound to take notice of the release and thereafter they purchased the mortgage from the Castros at their peril.

The power of attorney to Hepburn expressly authorized him to release "the mortgage on the Sobrante for forty thousand dollars." The words "for forty thousand dollars" were merely descriptive of the mortgage, and it was not intended to make the payment of forty thousand dollars a condition of the execution of the release. It will be presumed that there was a good consideration for the written release in the absence of evidence to the contrary. Indeed, the court is not bound to believe an interested witness as against such a presumption if the latter satisfies his mind. (Code Civ. Proc., sec. 2061, subd. sec. 2.)

3. *The John Wilson Title.*—There are several appeals affecting this title, presenting different and unrelated questions. These are: 1. The plaintiffs' appeal, which attacks the title; 2. The appeals of Sarah A. Wilson and of John Reynolds and C. F. Reynolds, involving the construction of the description of land in the agreement and deeds under which Wilson derived title; 3. The appeal of the former involving also the construction of a deed from one Caryl to Venable under which she deraigns title; and 4. The appeal of Benardo Fernandez, involving the construction of two deeds—one from Wilson to Narcisa Castro de Gutierrez; the other from McLane to Fernandez. The several questions thus raised will be considered in the order stated.

*The Validity of the Wilson Title.*—This title originated in the agreement between the Castros and Wilson, of date August 5, 1852. By the terms of this agreement Wilson, as attorney, was to prosecute to final confirmation or rejection the claim of the Castros to the Sobrante, and to receive for his services "one-tenth part thereof less by six hundred and forty acres, whenever the said Wilson [should] demand the same." The agreed services were duly rendered by Wilson, resulting in the confirmation of the claim by the Board of Land Commissioners—the decree becoming final April 6, 1857. Conveyances of the interest agreed upon were subsequently made to John Wilson by the Castros,—by Victor June 20, 1862, by Juan José February 7, 1862. But these deeds, it is claimed, being

subsequent to the deed of the Castros to Frisbie and de Zaldo, conveyed no title. The justice of this contention is therefore the question first to be considered.

The deed referred to conveys to the grantees, Frisbie and de Zaldo, all the lands embraced in the grant, "excepting and reserving from this conveyance all lands which have been heretofore conveyed by the said parties of the first part from the above described premises." The precise question is to determine the sense in which the words "heretofore conveyed" were intended by the parties. The term conveyed, or conveyance, is used in several senses. In the strict legal sense the latter term imports a transfer of legal title to land; but it is also habitually used by lawyers to denote any transfer of title, legal or equitable; and the last is also the popular sense of the term. On the face of the deed there is nothing to determine in which of these senses the term is used except the general principles of interpretation applying to contracts. One of these is that "technical words are to be interpreted as usually understood by persons in the profession or business to which they relate," etc. (Civ. Code, sec. 1645.) But this applies only to words exclusively technical or that are shown to be used in a technical sense; and here the words do not come within the former description; and whether they are used in a technical sense is the very question involved. The case therefore comes under the rule, "The words of a contract are to be understood in the ordinary and popular sense rather than according to their strict legal meaning," etc. (Civ. Code, sec. 1644); and it also comes within the rule "that a reservation in any grant . . . is to be interpreted in favor of the grantor." (Civ. Code, sec. 1069.) But the most decisive principle applying to the case is that a contract must receive such an interpretation as will make it "lawful" and "reasonable." (Civ. Code, sec. 1643.) For it cannot be supposed that the parties had in contemplation the unlawful purpose of defrauding prior purchasers. Nor would the contract thus construed be reasonable, even from a purely selfish point of view. For thus construed it would simply amount to the purchase of lawsuits in which the grantees could have no prospect of advantage except the possible chance of defrauding prior purchasers. We must, therefore, conclude from the document itself that the parties intended—as honest men under the cir-

cumstances would intend—to except from the conveyance all lands previously sold. And this conclusion becomes the more manifest when we consider the circumstances of the conveyance. For at that time the only conveyances, legal or equitable, that had been made by the Castros, or either of them, besides the Wilson contract—and the Ann R. Wilson deed, disallowed by the court—were: 1. The agreement of Juan José of December 4, 1847, to convey to Smith one square league (being the "Specific Tract A" of the findings); 2. The deed of the same to the Franklins March 29, 1852, four hundred and eighty acres; 3. The agreement of Victor of August 18, 1852, to Kelly & Felton ("Specific Tract B"), 4,098.26 acres; 4. The deed of the same to F. F. Boudre, November 23, 1853, one hundred acres; and 5. The deed of the same to the same November 1, 1853, two hundred acres. These in the aggregate disposed of about nine thousand three hundred and six acres of land, of which only seven hundred and eighty acres had been conveyed by deed—the balance (eight thousand five hundred and twenty-six acres) had been fully paid for; and it cannot be supposed that it was not intended to include them in the exception. We must conclude, therefore, that the legal title corresponding to these equitable interests and to that of Wilson remained in the Castros until the execution of their deeds to the equitable owners, subsequently to the deed to Frisbie and de Zaldo.

This conclusion renders it unnecessary to consider other points discussed in the briefs, and among others, that of notice of the Wilson agreement to Frisbie and de Zaldo. With reference to this each party claims that the burden of proof was on the other; but however this may be, the general finding (contained in the conclusions of law) that the parties deraigning title from Wilson are the owners in fee of the interest claimed must be regarded as settling this and all other questions involved in the question of title not negatived by the special findings.

*The Quantity of the Wilson Interest.*—This question depends upon the construction of the clause in the agreement between the Castros and Wilson, heretofore cited, viz.: "That said parties of the first part agree to convey to the said Wilson one-tenth part thereof [referring to the Sobrante] less by six hundred and forty acres," etc. The question is whether it

was intended that the six hundred and forty acres should come out of the whole grant before division, or out of Wilson's tenth after the division. The court adopted the latter construction, and we think rightly. This construction is the most obvious and natural, and it is confirmed by the circumstances that a deed of gift for six hundred and forty acres was executed contemporaneously to Ann R. Wilson, the wife of John Wilson. This was the construction placed on the agreement by Wilson himself in his deed to Tewksbury of February 13, 1854, under which the appellants deraign title.

Complaint is made of the decision of the court below as to the interest which passed from Caryl to Lysnar by the quitclaim deed of February 1, 1863. It is said in that behalf that the court charged the Caryl interest with 42.32+ acres on account thereof, whereas the charge should have been 25.48+ acres. We deem it sufficient to say as to this that the appellant does not make any citation to the record which throws any light on the contention made. Our attention is not directed to any specific inconsistency between the findings and the conclusions of law, or to any inadequacy of the findings to support the decree as rendered. Nor is there any reference to any page or folio of the transcript on appeal disclosing any error of the court below in this connection, either in the matter of figures or otherwise. Furthermore, after a long and tedious examination of the record we find ourselves entirely unable to discover wherein or how the court can be said to have charged the Caryl interest with 42.32 or any other particular number of acres. The appellant has filed an original brief, two petitions for rehearing, and an oral argument, and though his attention was called to his omission in this behalf in respondents' brief, he has continued to refrain from referring to page or folio of the record illustrating the point here made. From all this we cannot help but conclude that the contention is without support in the record.

Many of the points urged by appellants are rendered immaterial by our conclusion as to the correctness of the application of the statute of limitations by the court below. It will be unnecessary to further notice those points.

*Construction of the Caryl-Venable Deed.*—The description in this deed (under which the appellants Wilson deraign title) is as follows: ''The one undivided half of all my interest in

and to that certain tract or portion of land . . . known as the Castro Sobrante which was granted, etc. . . . Meaning to convey three-fourths of one-twentieth of said rancho less 320 acres. . . . The aforesaid ¾ of 1-20 acres of land was heretofore conveyed to the party of the first part by Marcella B. Bradley by deed,'' etc.

At the time the deed was made the whole interest of Caryl was three fourths of one half of the Wilson interest in the Sobrante, or, as expressed in the deed, ''three-fourths of one-twentieth of said rancho less 320 acres.'' The question then is: Was it the intention of the grantor to convey the whole of his interest, or only half? The court held the latter to be the true intent of the deed, and we think there can be no doubt this was the case. The deed is very carelessly written; and under one of the clauses relied upon by the appellants—if taken literally and held to be the paramount call—the deed would convey only three fourths of one twentieth, equal to three eightieths of an acre. There was evidently an omission here; and it is almost equally evident there was an omission in the other clause.

*Construction of the Wilson-Gutierrez and the McLane-Fernandez Deeds.*—At the date of the former deed, June 25, 1862, Wilson was still the owner of about six hundred and seventy-three acres undivided of his original interest. The deed purports to be made in consideration of ''the good will and respect which the said John Wilson entertains for the party of the second part'' (Narcisa Castro de Gutierrez), and ''gives, sells and conveys [to her] all his right, title and interest . . . to three hundred and twenty acres of land to be taken out of his interest which he now holds in a certain tract of land, etc. [the Sobrante], not to be taken where the said Wilson or any of his tenants are in possession in said grant, the right here sold is an undivided one,'' etc.

It is claimed by the appellant (who has succeeded to the title of the grantee less an interest equal to 2.30 acres previously conveyed by her to another) that this deed should be construed as a grant of three hundred and twenty acres of land undivided of the six hundred and seventy-three acres then owned by the grantor; but the court construed the deed as granting only his proportionate interest in the number of acres mentioned and as equivalent to 18.05 average acres of

land in the whole of said Sobrante. This construction, we
think, is correct. The deed does not purport to convey the
specified number of acres undivided or an interest equal to
that quantity of land, but only the interest of the grantor in
three hundred and twenty acres, to be taken by the grantee in
some part of the ranch other than "where the said Wilson or
any of his tenants are in possession." The authorities cited
by the appellant do not sustain his position. In *Grogan* v.
*Vache,* 45 Cal. 613—and in the cases there cited—there was
a "conveyance of a definite number of acres"; which is dif-
ferent from the case here, where the conveyance is of the inter-
est of the grantor, in a specified number of acres.

The deed from McLane to Fernandez does not appear in
the record, but the court finds that McLane made and exe-
cuted to Fernandez a deed "purporting to quitclaim to said
Fernandez all the interest of the said grantor in and to fifty
acres of the Sobrante undivided." The court held, in effect,
that the deed conveyed to the grantee, not fifty acres of the
undivided interest of the grantor, but his interest in fifty
acres. The question—so far as the facts are disclosed to us
by the record—is similar to the question already discussed;
and we must hold similarly, that there was no error in the
ruling of the court.

4. *The Ann R. Wilson Title.*—This question depends upon
the construction of the deed of Juan José Castro and Victor
Castro to Mrs. Ann R. Wilson of date August 5, 1852. What-
ever title vested in Mrs. Wilson by this deed—less a small
interest previously conveyed by her to one Bickler—became
vested prior to the beginning of the suit in the appellants
Reynolds, Mhoon, and McElrath. These claim that the deed
conveyed to Mrs. Wilson an undivided interest of six hun-
dred and forty acres in the Sobrante. This claim was dis-
allowed by the court, and the question is as to the correctness
of this ruling. The deed purports "to give, grant and . . .
donate . . . to the party of the second part" the premises
described. The description of the land conveyed—omitting
parts unnecessary to consider here—is as follows:—

"The following described tract of land containing six hun-
dred and forty acres being part of . . . the Sobrante Grant,
. . . beginning at a pile or point of rocks, . . . which pile or
point of rocks is known as and called the southwestern corner

of the San Pablo Grant, . . . and from thence the line of the said land now granted by this deed is to run eastward along the south line of the said San Pablo Grant till it reaches the western line of a piece of land lately sold by the said Victor Castro to one Henry L. Ford, and then at a stake made a corner; and thence with the said Ford's western line in a southwesterly direction till it reaches his southwesterly corner, and from thence with his southern line till it reaches his south-easterly corner, and then in the same direction up the hill as the party of the second part shall desire, and then from that point to extend her eastern line in the same direction as Ford's eastern line extends (i. e. parallel to Ford's eastern line), and she is also to extend her western line from the place of beginning in a southerly direction being a little east of south, till the amount of six hundred and forty (640) acres is included in her survey, making her south line parallel with the said Ford's south line, and reference is made to Ford's lines whether they are now completed or yet to be completed as the same shall be finally settled by the parties with all appurtenances there-unto belonging.

"To have and to hold the same, etc., . . . and as soon as the proper survey is made the parties of the first part cove-nant to make a new deed of the like effect with this only more particularly describing the metes and bounds of the tract now granted, and the parties of the first part further covenant if the land now conveyed shall not fall within the Sobrante Grant as the same shall be confirmed under the laws and decisions of the United States, then the parties of the first part are to convey in place of this an equal quantity in value and extent considered together out of such as shall be con-firmed to them in the said Sobrante Grant." The tract of land purported to be described in the aforesaid deed, it is found by the court, "is not and never was any part of or portion of said Sobrante."

The contention of the appellants is that this falls within the decision in *Schenk* v. *Evoy*, 24 Cal. 104, and similar cases. The description in the deed under consideration in *Schenk* v. *Evoy* was of a tract of land "situate upon the western side of San Pablo Creek, in a valley known as the Cruzito Valley, which is a part of the tract of land known as the Sobrante Claim, and situated in Contra Costa County and state of

California, bounded and described as follows: Having for the eastern boundary thereof a line following the course of San Pablo Creek, as it now runs, through the center thereof from the northern to the southern extremity of said valley, and extending back westward from said line so as to include one thousand (1,000) acres of land, and no more, on the western side of said valley; said land to be laid out, as near as possible, in a square form; all the lines, except the first mentioned line to be straight, conforming with the cardinal points by true meridian." The court in that case, in commenting upon the foregoing deed, says: "Cruzito Valley is seven or eight miles long, and runs, in its general course, north and south. The one thousand acres called for by the deed lies in the valley, and on the west side of San Pablo Creek; and by the deed, they are to be laid out 'as nearly as possible in a square form,' the eastern side of the square resting upon the creek, 'as it runs through the center of the valley'; the other sides of the square 'to be straight, conforming with the cardinal points by true meridian.'" And the court held that the deed failed to locate the land conveyed by sufficient description, and it was, therefore, a grant of quantity instead of any particular tract, and the grantee thereof became interested in all the lands embraced within the larger area as tenant in common with his grantor. It will be seen, however, that the deed in this case purports to convey a specific tract of land "beginning at a pile or point of rocks, . . . which pile or point of rocks is known as and called the southwestern corner of the San Pablo Grant." This starting call, it is presumed, was a known and recognized monument on the ground. The description then attempts to give the other calls, but they are too indefinite to inclose any particular tract of land. As contended by the respondents, the case falls within the rule laid down in *Grogan* v. *Vache,* 45 Cal. 610, and others in the same line. In that case the description of the deed was: "Commencing on the southerly side of the Paicines Rancho, at a large live oak tree, marked with a (X) cross; thence running in an easterly direction, crossing the creek above the upper ford; thence in a southerly direction and parallel with the line of said rancho to a large white oak tree marked with a (X) cross at the lower ford; thence along said creek to the line of said Rancho Paicines, containing

thirty-five (35) acres, more or less." It was held in that case, after reviewing a number of decisions, *Schenk* v. *Evoy* included, that the deed there under consideration attempted to convey a specific tract of land, but was so defective as to fail in its purpose. The court says: "We find no case in which a deed, which purports to describe a specific tract of land, mentioned as parcel of a larger tract, but which fails to describe the land intended to be conveyed, in such a manner that it can be located, is held to operate, by reason of such insufficient description of the specific tract, as a conveyance of an undivided interest in the larger tract; and, in our opinion, there is no rule for the construction of deeds which will work that result." The land mentioned in the deed in *Schenk* v. *Evoy,* 24 Cal. 104, was within the Sobrante Rancho; whereas the land attempted to be granted in the deed, containing the defective description in the present case, falls entirely outside of the Sobrante. We think the ruling of the court in the premises was correct.

5. *The Franklin Title.*—There are two appeals affecting this title, viz.: That of the plaintiffs, who attack it, and that of Elizabeth A. Rodgers—to whom, and another, this interest was allotted, and who complains of a deduction of the quantity of her land on account of Specific Tracts A to F, inclusive, which were lost to the owners of the grant by the statute of limitations. These questions will be considered in the order stated.

*The Validity of the Title.*—This question depends on the construction of a deed from Juan José Castro to Selim Franklin and Edward Franklin, from whom the respondent Rodgers deraigns title. The description in the deed, omitting immaterial parts, is as follows:—

"All my right, title and interest to one and one-half square miles of farming land . . . being a portion of the lands granted to me in 1841, etc., . . . known as the Sobrante, running from the corral of Joaquin Castro, one and one-half miles and bounded by the creek one and one-half miles."

This description is substantially identical with the description of the land construed in *Schenk* v. *Evoy,* 24 Cal. 109, and the court, we think, rightly construed it as conveying an undivided interest in the Sobrante.

*The Quantity of the Franklin Interest.*—There is deducted

from the Franklin interest (four hundred and eighty acres), a fraction of over sixty-three acres for loss to the owners of the Sobrante on account of the specific tracts found to be barred by the statute of limitations; which was charged proportionately to the owners of undivided interests who had not conveyed their interests in those tracts. It is objected that the court erred in holding that these tracts were barred. It is stated by the respondent's attorneys that the deduction was made wholly on account of Specific Tracts D, E, and F. Whether this statement is correct or the contrary cannot be determined from the record. But the case seems to be the same with reference to all the tracts, and in support of the judgment we may assume such to be the case. The objection is that the findings are insufficient to support the conclusion of the court that the action was barred as to these tracts. The objection is made on the findings, the effect of which is thus stated by the appellants' counsel:—

"As to Specific Tracts D, E and F, the findings are that the original holders entered under conveyances from tenants in common having about nine-tenths of the whole Sobrante; and that those who succeeded to their interest had been in the open, peaceable, notorious, continuous occupation and possession of the several tracts, having them protected by substantial inclosures, for more than five years before the commencement of the action, as against these tracts."

This statement is sufficiently correct as far as it goes, but it should have been stated more specifically that the periods referred to by the finding were, respectively, in the case of Tract D, from the year 1872, of Tract E, from the year 1863, and of Tract F, from the year 1859; and further, that with reference to each of these tracts it is found (in the conclusions of law) that the action is barred by the provisions of sections 318, 319, 321, and 322 of the Code of Civil Procedure, and that the various parties occupying and claiming the several parts of the tract are the owners thereof. These, though placed among the conclusions of law, are findings of ultimate facts, and are to be regarded as such. (*Foot* v. *Murphy,* 72 Cal. 105; *Savings and Loan Society* v. *Burnett,* 106 Cal. 538, and cases there cited.)

It was stated in one of the petitions for rehearing that "Mr. Justice Van Dyke was a party to the action, hence he is dis-

qualified in the case.'' If counsel making the foregoing state-ment had examined the papers on file in the court below in said action he would have found the disclaimer of Walter Van Dyke, dated May 9, 1895, of ''all right, title, interest or es-tate in or to the land or premises in said complaint described, or in any part or portion thereof.''

The foregoing opinion disposes of every material conten-tion made by appellants.

The judgment and orders appealed from are affirmed.

Rehearing denied.