[S. F. No. 4722. Department One.—April 27, 1908.]

VICTOR CASTRO, Appellant, v. EDSON ADAMS et al., Respondents, and CLINTON C. TRIPP, Cross-Complainant, Appellant.

ACTION TO QUIET TITLE—MEXICAN GRANT—CONVEYANCE BY PLAINTIFF—MORTGAGE BACK—INSUFFICIENT POSSESSION—NONSUIT.—In an action to quiet title under a Mexican grant, where it appears that the only title the plaintiff had thereunder, he had conveyed to third parties, who had executed a mortgage back to plaintiff, such mortgage passed no title; and where the plaintiff shows no other title or possession, except that of an adobe house, not shown to be situated on the Mexican grant, and no patent appears to have issued for such grant, the plaintiff was properly nonsuited.

ID.—CROSS-COMPLAINT BY ASSIGNEE OF MORTGAGE—PAYMENT OUT OF SALES—CONSTRUCTIVE TRUST—LIMITATIONS—STALE DEMAND—NONSUIT.—Where the cross-complainant claimed as assignee of the mortgage, which by its terms was payable out of sales, alleging that numerous conveyances were made, but not showing when they were made, or what prices were realized, it must be presumed that all conveyances were made within a reasonable time, and when there was a delay of over thirty-five years to demand an accounting, even though a constructive trust was relied upon, growing out of a breach of a parol interest by parties in confidential relation, the statute would begin to run against such trust, from the time of such breach, and the cause of action being barred by the statute of limitations, and the suit being upon a stale demand in equity, a nonsuit of the cross-complainant was properly granted.

APPEAL from a judgment of the Superior Court of Contra Costa County. J. V. Coffey, Judge presiding.

The facts are stated in the opinion of the court.

Galpin, Elkins & Frost, and Philip G. Galpin, for Plaintiff, Appellant.

Richard P. Henshall, for Cross-Complainant, Appellant.

Charles E. Wilson, and W. S. Tinning, for Respondents.

SHAW, J.—This action was begun on August 8, 1888. The amended complaint states a cause of action against a large

number of persons, to quiet title to a tract of land, comprising a Mexican grant known as "Rancho el Sobrante." It alleges that the plaintiff is in possession and is the owner in fee of the lands. Clinton C. Tripp filed a cross-complaint alleging that he is the owner and holder of a mortage upon the land for forty thousand dollars, executed by former owners in November, 1853, which is due and unpaid, and asking for a foreclosure thereof. The complaint and cross-complaint were each unverified and the respective adverse parties thereto answered by a general denial and also set up the several statutes of limitations which the respective defendants deemed a bar to the action. The cause came on for trial, the plaintiff and cross-complainant each introduced evidence and rested, whereupon, on motion of the adverse parties, the court gave judgment of nonsuit against both the plaintiff Castro and the cross-complainant, Tripp.

The appeals from this judgment are taken by Tripp and Castro separately. The judgment was rendered on September 25, 1891, but for some unexplained reason it was not entered until March 21, 1906. Victor Castro had died in the mean time, and the appeals in his behalf are taken by Julia B. Galpin, as executrix of his will and as his successor in interest. A bill of exceptions showing the evidence taken at the trial was settled and filed on September 12, 1893.

The plaintiff offered evidence tending to show that prior to November, 1853, he and one Juan Jose Castro were the owners of the land, under a grant of the Mexican government made in 1841, and that proceedings were pending before the United States land commissioners, in 1853, to have their grant confirmed and obtain a patent for the land from the United States. He then introduced a deed executed on November 23, 1853, by himself and Juan Jose Castro, whereby they conveyed the lands to John B. Frisbie and Ramon de Zaldo. He also introduced another instrument, executed on the same day as the deed, by Frisbie and De Zaldo to the two Castros, purporting to mortgage to the Castros the same land to secure the payment of the sum of forty thousand dollars by them to the Castros as soon as that sum should be realized from sales of the land to be made by the said mortgagors. Tripp claims as the holder of this instrument.

The motion for nonsuit as to the plaintiff was upon the ground that the evidence was insufficient to establish title in him. The only title he ever had was conveyed to Frisbie and De Zaldo by the deed above mentioned. The instrument executed on the same day by Frisbie and De Zaldo to him and Juan Jose Castro was merely a mortgage and vested no title or interest in the land in the mortgagees. This proposition was settled by the decision in the case of *Adams* v. *Hopkins,* 144 Cal. 32, [77 Pac. 712], a case to which the present appellants were parties and in which they asserted the same rights in this land under the same instruments. There is no evidence sufficient to show that any title or interest in the land ever thereafter became vested in the plaintiff.

In the briefs it is asserted that there was evidence that he was in possession at the time the action was begun, and it is suggested that this possession is *prima facie* evidence of title. The plaintiff testified that in November, 1853, at the time the deed was executed, he lived in a house on the San Pablo road in Contra Costa County, which he described as "my adobe house," and that, at the time of the trial, in September, 1891, he lived in the same house, and that "Besides myself and my brother, Juan Jose Castro, there were in 1853 other parties in possession of a portion of this ranch." There was also given in evidence a petition of plaintiff and Juan Jose Castro, filed with the board of land commissioners in May, 1852, which alleged that they were then in possession of the ranch, and a decree of the land commission, made in July 3, 1855, confirming the claim of the petitioners under the Mexican grant. This was all the evidence tending to show title by possession. The statement of Castro as to present possession was a mere incidental remark and referred only to a house in which he lived on the San Pablo road. The ranch comprised some twenty thousand acres, and there is nothing to show that the house was situated on the ranch, or, if it is situated thereon, that he ever occupied a foot of the land outside of the house. The petition to the land commissioners and the decree of that board were introduced to show a confirmation of the title under the Mexican grant and not to establish possession. It is not shown who were parties to the proceeding

and the decree would not be evidence of possession against persons who were not parties. The statements in the petition refer only to the possession in 1852 and not afterward. The trial took place nearly forty years after that date. There is no presumption that he continued in possession after making the deed of November 23, 1853. It is clearly apparent from all these circumstances, and from the entire case as presented by the record, that there was no real attempt in the court below to show title by proof of possession. The evidence on the subject is much too vague and shadowy to justify a reversal of the judgment of nonsuit. The nonsuit was properly granted as to the plaintiff.

The nonsuit as to Tripp was granted on the ground that the evidence showed no title in him, and that his right to foreclose the mortage of Frisbie and De Zaldo, conceding him to be the holder thereof, was barred by the statute of limitations, and that the evidence showed that he was not the owner or holder of the mortgage.

The mortgage set forth in the cross-complaint provided that the forty thousand dollars was to be paid "as soon as the same shall be realized from the sales made by" the mortgagors of the ranch lands and that the mortgagors should pay over to the Castros the proceeds of sales from the ranch, until the whole sum was paid. Any sum of money received upon a sale of any part thereof was due to the Castros as soon as it was received by Frisbie and De Zaldo. No time was prescribed wherein sales were to be made by them. The law would imply an understanding that it should be within a time that would be reasonable under all the circumstances. The cross-complaint alleges that Frisbie and De Zaldo "subsequently" made conveyances whereby they conveyed the property to the numerous defendants, some two hundred in all, some of whose names were unknown, and it does not state when these conveyances were made, whether in separate tracts to the respective defendants, or jointly to all by several conveyances of different interests, nor does it give any explanation of the cross-complainant's inability to make more explicit statements as to the conveyances and parties, the dates when they were made, the prices realized, and the disposition of the purchase money,

or any circumstances which would excuse the delay in bringing the action. The evidence is also devoid of any such explanation. There was a delay of over thirty-five years. If it is conceded, or assumed, in the absence of such explanation, that a reasonable time might have extended to a period as long as five years after the execution of the instrument, the statute would begin to run at. the end of that time and the action would have been barred seven times over by the statute of limitations. Both the cross-complaint and the case as established on the trial indicate that the suit is a stale demand upon which equity should refuse to grant any relief.

It is argued that the transaction as explained by Castro was of such a nature that a constructive trust in the land was established in his favor. This, if true, would not avoid the bar of the statute nor remove the laches. If a constructive trust arose at all by virtue of that transaction, it. was because Frisbie and De Zaldo occupied fiduciary or confidential relations toward Castro and violated an agreement to execute an express parol trust to sell the land and pay a part of the proceeds to Castro. Equity might raise a constructive trust in favor of Castro, upon the failure of the grantees in the deed to perform the void parol trust, if confidential relations did exist as claimed. But, in such case, the breach of the parol agreement would at once set in motion the statute of limitations as to the constructive trust. They would be required to sell the land within a reasonable time. Their conceded failure to pay over the money within the extreme period of thirty-five years, with no showing of any reason for the delay, in connection with the averment that they sold all the property at some indefinite time after the inception of the trust, furnished at least presumptive evidence that the constructive trust and the obligation to pay had arisen, and that the bar of the statute of limitations and of the equitable doctrine of laches began to run against the enforcement of it many years before the period prescribed by the statute and the rules of equity.

There is no evidence in the record that the patent for the ranch from the United States was ever issued in pursuance of the decree of confirmation. The case is therefore to be decided upon the basis of the equitable rights and titles.

of the appellants, without regard to the issuance of such patent. The arguments based upon the fact that the patent was of recent issue are without foundation and must be dismissed without further consideration.

All the rights involved and asserted by the appellants here were asserted by them in an action in the same court, to which they were parties, for the partition of the same land, entitled *Adams* v. *Hopkins*. The complaint in that action was filed in 1888, a few days before the beginning of this action. That action was tried and an interlocutory decree of partition was made and entered therein denying any relief to the appellants in this action. They appealed from that decree to this court. The same points and questions that are presented upon these appeals were presented upon the appeals in that case, were elaborately argued, and were given prolonged consideration by this court, a rehearing having been twice granted in the case. It was finally decided adversely to Castro and Tripp on all points and the judgment was finally affirmed on July 1, 1904. (*Adams* v. *Hopkins*, 144 Cal. 32, [77 Pac. 712].)

The judgments of nonsuit are affirmed.

Angellotti, J., and Sloss, J., concurred.

Hearing in Bank denied.