[Civ. No. 340. Third Appellate District.—July 31, 1907.]

## MARY L. KEATING, Respondent, v. MARY J. MORRISSEY, Appellant.

PROMISSORY NOTE—PRESUMPTION OF CONSIDERATION—BURDEN OF PROOF.—The presumption is that a promissory note was given for a consideration, and this presumption has the effect of *prima facie* evidence; and the burden of proof is upon the defendant to overcome this presumption, by proof sufficient to satisfy the jury that the note was without consideration.

ID.—PROVINCE OF JURY—DISREGARD OF DEFENDANT'S EVIDENCE—FINDING IN FAVOR OF PRESUMPTION—CONCLUSIVENESS OF VERDICT.—The jury is the exclusive judge of the weight of the evidence before it; and it was within its province to determine whether the defendant's evidence was of sufficient strength to overcome the presumption of consideration of the note sued upon, and if it was not satisfied of its sufficiency, it was at liberty to disregard it, and to find in favor of the presumption, and its verdict will not be disturbed upon appeal from an order denying a new trial.

ID.—EVIDENCE OVERCOMING DISPUTABLE PRESUMPTION—DETERMINATION OF QUESTION—POWER OF APPELLATE COURT.—Although, where the evidence to the contrary is sufficient to overcome a disputable presumption, it completely exhausts its force, yet there must be, under our system, a power to determine the question whether the evidence is sufficient for that purpose. The fact that the record upon appeal seems to show evidence to the contrary cannot justify the appellate court in setting aside the conclusion of the jury and of the lower court against the sufficiency of such evidence, where there is nothing in the record which would warrant the appellate court in declaring, as matter of law, that the finding is against the evidence.

ID.—FORBEARANCE TO SUE DEFENDANT'S SON—UNFAITHFUL AGENT FOR PLAINTIFF—SUFFICIENCY OF CONSIDERATION.—Where there was evidence tending to show that the note sued upon was executed by the defendant under a promise made on the part of the payee that she would refrain from suing the son of defendant, who had been an unfaithful agent of the plaintiff, upon a note bearing his signature payable to plaintiff, such evidence tended to show what in law is a sufficient consideration to support the note of the defendant to plaintiff. The law in such case will not attempt to measure the amount, or weigh the *quantum,* of the consideration.

ID.—CRIMINAL LIABILITY OF AGENT—DISGRACE OF CIVIL ACTION—BELIEF OF DEFENDANT NOT MATERIAL.—Though a note given in consideration of a direct promise not to prosecute defendant's son for a felony would be void as against public policy, yet where the jury found against such promise, its finding on that subject is binding upon this court; and where the evidence tended to show that defendant considered that a civil suit against her son would involve him in public disgrace, as exposing his bad faith and dishonesty, she had a sufficient incentive to execute the note in suit in consideration of forbearance of the plaintiff to sue her son; and if such was the only agreement in fact, her mere belief that her son had committed a criminal offense would be immaterial.

APPEAL from an order of the Superior Court of San Joaquin County, denying a new trial. F. H. Smith, Judge.

The facts are stated in the opinion of the court.

Arthur L. Levinsky, for Appellant.

Ashley & Neumiller, for Respondent.

HART, J.—This is an action upon a promissory note for the sum of $5,041, with interest at the rate of five per cent per annum. Said note was made and delivered by the defendant to the plaintiff in the county of San Joaquin on the sixteenth day of July, 1902, payable one year after date. The case was tried by jury, a verdict returned in favor of plaintiff for the sum of $5,631.33, representing the principal and interest on said note, and a judgment entered accordingly.

The answer sets out with minute particularity the circumstances which, it is alleged, attended the transaction resulting in the execution of the note, the substance of all which is that said note was secured from the defendant by the plain-

tiff by means of threats or duress, and that, therefore, there was no valid consideration for the same. The defendant prosecutes this appeal from the order denying her motion for a new trial, upon a bill of exceptions.

The defense relied upon for the defeat of the action, as must be inferred from the allegations of the answer, as we have briefly stated them, was that the note which forms the basis of the suit was without sufficient or any consideration. We will proceed to an examination of the record for the purpose of determining this question.

The undisputed facts of the case, as developed by the proofs, are: Several years prior to the execution of the note which is the subject of this suit, the plaintiff made Walter Morrissey, a son of the defendant, her agent, with full power to negotiate loans of money for her. While so acting in that capacity for plaintiff, said Morrissey loaned, or pretended to have loaned, certain sums of money to different parties, taking in the name of plaintiff what purported to be their promissory notes therefor. These notes—fourteen in number—were delivered to the plaintiff by Morrissey. All of these notes, with the exception of one which was made so as to mature one year after the date of its execution, were made payable "one day after date," and represented amounts varying from $150 to $800, the sum total of the money so claimed to have been loaned being $5,041. Some of these notes were made in the year 1899, others in year 1900 and one in the year 1901. Three of these notes bear upon the backs thereof an indorsement, signed by the plaintiff, acknowledging the receipt of the interest which had accrued thereon. The plaintiff did not, at the several times at which she received said notes from Morrissey, either personally or by reputation, know persons bearing the names represented by the signatures subscribed to the notes. A short time before the making and delivery of the note by the defendant to the plaintiff, Morrissey, without previously apprising the plaintiff or any of his other acquaintances of his intention to do so, departed from San Joaquin county, or at least could not be found at his home or in that county. The plaintiff was desirous of securing the payment of the interest which was due upon the notes, and, not being able to find her agent, and, as stated, not knowing anything of or about the parties who were represented to have made the notes, proceeded to make an in-

vestigation into the matter. She sought the aid and advice of a Mr. Crane, of Stockton, and, as he was not acquainted with any persons of the names attached to the notes as representing the makers thereof, the great register and the tax-roll of the county were carefully examined, with the result that neither contained the names attached to the notes. Thereupon the plaintiff called at the residence of the defendant and obtained from her the note, to secure the payment of which this action was instituted.

At the trial, the plaintiff offered, and the same was received in evidence, the note in dispute, and then rested her case. This constituted, of course, *prima facie* proof of all that the note purported to be. The presumption is that the note was given for a sufficient consideration. (Code Civ. Proc., sec. 1963, subd. 21; Civ. Code, sec. 1614.) The burden of proving want of consideration sufficient to support the note was upon the defendant. (Civ. Code, sec. 1615.) The defendant, having been sworn as a witness, gave testimony directed to the support of the allegations of her answer, stating that on both occasions of the visit of the plaintiff at her residence, the latter declared that she had investigated the great register and tax-roll of the county, and that neither contained names corresponding with those attached to the notes delivered to her by Walter Morrissey; that she submitted to the defendant for inspection the fourteen notes, said they were forgeries and that Walter was guilty of forgery, and that unless she was reimbursed or indemnified against the loss which it was probable she would sustain through the criminal acts of said Walter, she would cause him to be arrested and prosecuted for a felony and punished therefor by imprisonment in the state penitentiary. The defendant further testified that when the conversations occurred she was and had been for some time prior thereto in ill-health, and, keenly realizing the humiliation and chagrin which the disgrace occasioned by the prosecution of her son upon a felony charge would entail upon herself and her family, and influenced by no other motive or consideration, readily agreed, on the occasion of the first interview between plaintiff and herself, to adjust the matter. On the following day, so defendant testified, the plaintiff returned to the residence of the former, and, presenting to her a printed blank form of a promissory note, requested her to fill it out and sign it, at the

same time repeating her threat to prosecute Walter unless the note was given by defendant. The defendant thereupon filled out the note for the sum of $5,041 with interest at the rate of five per cent and attached her signature thereto. Upon the suggestion of the plaintiff the note was executed for the sum of $5,041, although the interest due on the fourteen notes turned over to plaintiff by Walter Morrissey amounted to the sum of $600. Plaintiff waived her right to said interest, saying to the defendant that she would be satisfied with a note for the principal sum so obtained from her by Walter. A majority of these fourteen notes called for interest at the rate of eight per cent per annum—the remainder provided for interest at the rate of nine and ten per cent. One of the fourteen notes, so delivered to plaintiff by said Walter, purported to have been executed by "W. A. Morrissey" and one "Geo. L. Brown," and the defendant, while under cross-examination as a witness, admitted that her son's name was "W. A. Morrissey" and that the signature to the note of which we are speaking appeared to be in the handwriting of her son. The defendant's version of the transaction was corroborated to some extent by her daughter, who testified that, being in a room adjoining the one in which occurred the conversation between the parties on the day upon which the note was made, she overheard the plaintiff say "that if a paper was not signed, she would have my brother Walter arrested." At the conclusion of the testimony thus given on behalf of the defendant, the defense rested.

The plaintiff was sworn as a witness in rebuttal, and not only denied making the threats to which the defendant and her daughter testified or using any language from which it might be inferred that she threatened to prosecute Walter for or even accused him of committing forgery, but also gave, in full and in detail, what she claimed to have been said by both herself and the defendant during the course of the only conversations held between the parties involving the transaction resulting in the execution of the note. She was exhaustively cross-examined, but nothing was thus brought out showing affirmatively or otherwise that there was not a valid consideration for the note. In other words, there was nothing stated by her as a witness which tended affirmatively to overcome the presumption of a consideration. Among other things, she declared that the defendant, in the first conversa-

tion, said that she had previously made efforts to secure for Walter the necessary money with which to reimburse the plaintiff, thus showing, at least, that the defendant knew of the financial transactions between her son and the plaintiff, and that she had before the conversations formed an intention to aid Walter in discharging his obligation to plaintiff. This part of the conversation was not disputed.

It is only elementary to say that the jury, or court trying an issue of fact, as the exclusive judge of the weight of all evidence submitted upon such issue and of the credibility of the witnesses, has the right to discredit the witnesses or disregard altogether evidence offered in support of a material issue in the case. And in the case at bar it was within the exclusive province of the jury to declare whether the evidence offered to overcome the presumption of consideration for the note was of sufficient strength to do so or not. Having determined that it was not, the verdict so returned is, as to the facts, unimpeachable, so far as this court is concerned. A court or jury is not bound to believe an interested witness as against a presumption if the latter satisfies its mind. (Code Civ. Proc., sec. 2061, subd. 2; *Adams* v. *Hopkins,* 144 Cal. 36, [77 Pac. 712]; *People* v. *Milner,* 122 Cal. 179, [54 Pac. 833].) In the last-mentioned case, the court, through Mr. Justice Henshaw, thus states the rule: "By section 2061, subdivision 2, of the Code of Civil Procedure, jurors are to be instructed 'that they are not bound to decide in conformity with the declarations of any number of witnesses which do not produce conviction in their minds, against a less number, or against a presumption or other evidence satisfying their minds.' In this is a distinct recognition of the facts: 1. That a presumption is evidence; and 2. That it is evidence which may outweigh the positive testimony of witnesses against it. It has been said that disputable presumptions are allowed to stand not against the facts they represent, but in lieu of proof of the facts, and that when the fact is proven contrary to the presumption, no conflict arises, but the presumption is simply overcome and dispelled. (Citing *Savings etc. Soc.* v. *Burnett,* 106 Cal. 514, [39 Pac. 922].) This is true. Against a proved fact, or a fact admitted, a disputable presumption has no weight, but where it is undertaken to prove the fact against the presumption, it still remains with the jury to say whether or not the fact has been proven; and, if they

are not satisfied with the proof offered in its support, they are at liberty to accept the evidence of the presumption.''

It is, of course, at once to be conceded that a note executed in consideration of a promise to refrain from prosecuting a person for a felony would be absolutely void, for such a contract would be opposed to public morals as well as public policy.   In fact, such a consideration in this case, if a forgery had been committed by Walter, would itself constitute or involve the commission of a crime.   But, as we have indicated, the jury found against the contention of the defendant as to the circumstances under which the note was given, and we are bound by that finding.   It is also to be admitted that if there is shown by the evidence, either by presumptive or positive proof, a valid consideration whatever for the note—if for instance, the note was signed upon an agreement or promise upon the part of the payee that she would refrain from instituting suit on the one note of the fourteen bearing the signature of Walter Morrissey—there would then be in law a sufficient consideration for the support of the note, for ''the law will not attempt to measure the amount or weigh the *quantum* of the consideration.''     (*Whelan* v. *Swain*, 132 Cal. 391, [64 Pac. 560] ; *Pillans* v. *Mierop*, Lang. S. C. L. Cont. 177.)   We think the evidence, both circumstantial and direct, fairly warrants the inference that Mrs. Morrissey, in executing the note, was influenced by the consideration that, for so doing, the plaintiff would forbear bringing a civil action against her son for the recovery of the money due plaintiff from him.   If the facts of the transactions between plaintiff and Walter were such as the record seems to indicate them to have been, it is just as logical to infer that Mrs. Morrissey was almost as much in dread of the consequences of a civil as a criminal action, for it is only a response to the natural sentiment and love of a mother that she should spare no efforts to save her son from the disgrace and loss of confidence of the public generally which would follow the exposure through a lawsuit of bad faith and dishonesty in him in his business dealings with another party.   Besides, the desire to save herself and family and family name from being linked with transactions of a shady nature or involving fraud or the elements of a public crime would serve as a strong incentive or inducement in a mother to prevent the institution of a civil action which would expose to the public the ques-

tionable circumstances giving rise to the suit. But, as we have declared, we are not called upon to hunt for the specific reasons which moved the defendant in signing the note. It is enough to know that, after all the evidence was introduced and considered, the jurors, guided presumably by all the criteria by which the law says they must be governed in weighing evidence, decided that the presumption of a sufficient consideration for the support of the instrument was not dispelled, or that such presumption satisfied their minds as against the other evidence which failed to possess such persuasive power.

We have consulted with painstaking care all the authorities cited by counsel representing both sides of this controversy. There is no conflict between the views here and those expressed in the cases to which our attention has been called There is a large number of specifications of alleged error, involving rulings of the court in the reception and rejection of evidence and in the giving and refusal of instructions. It would require unnecessary labor to give all the assignments of error special notice. We may say, however, that we have given much time to an examination of the record and to a consideration of all the points urged, and we may state, generally, that we think the court carefully, fully and correctly declared to the jury the law applicable to the issues and the facts, and that in the rulings upon the reception and rejection of evidence we find nothing which in any degree prejudiced the rights of appellant. It is noticeable that in all instances where questions were propounded to a witness and to which objections were sustained, the same questions to the same witness were at some other time during her examination allowed. The rulings of the court were, therefore, not erroneous. We think the case was fairly tried, and that the appellant, therefore, suffered no prejudice either from the rulings of the court upon the admission and rejection of testimony, or from the giving and refusing of instructions.

The order is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on August 29, 1907, and the following opinion was then rendered thereon:

HART, J.—In his petition for a rehearing, counsel for appellant insists that this court was justified in declaring that the evidence introduced both upon the part of the defendant and the plaintiff, after the proof of the note upon which the action was brought, was sufficient to and did overcome the presumption of a consideration for said note. He calls our attention to certain language used in the case of *Adams* v. *Hopkins,* 144 Cal. 36, [77 Pac. 712], which, he claims, sustains his contention that upon the evidence as shown by the record the case should be reversed, because said presumption was, in truth, overcome. The language referred to reads: "It will be presumed that there was a good consideration for the written release, *in the absence of evidence to the contrary.*" The rule as thus stated is undoubtedly sound and applicable to all disputable presumptions of fact. In truth, their very characterization by the code provision as "disputable presumptions" carries with it necessarily the right to controvert them by other evidence and the complete exhaustion of their force when evidence has been introduced sufficient to destroy the verity of the facts for which, until then, the law, for reasons of expediency, makes them responsible vouchers. The presumption of a consideration is, indeed, enough to support the note, in the absence of evidence to the contrary. But in whom is vested, under our system, the exclusive province of determining when there is *evidence to the contrary?* There must be, as counsel will concede, a determination by somebody that there is in fact evidence to the contrary. The fact that the record here *seems* to show "evidence to the contrary" is not enough, so far as our power over the verdict and findings is concerned. It must have been "evidence to the contrary" to which the proper tribunal has given such weight as to enable *it* to say that such "evidence to the contrary" has overcome and dispelled the presumption. The learned counsel's argument would be valid and might be sound addressed to a jury or court trying the facts, but when addressed to this court it overlooks the constitutional provision limiting the power of the appellate courts of this state to the determination of questions of law alone, and that, therefore, the supreme and this court would clearly transcend their appellate jurisdiction, as outlined by the constitution, were they to engage in the business of indiscriminately setting aside verdicts of juries and findings and judgments of trial courts upon the ground of

the insufficiency of the evidence to sustain them, except, of course, in such cases only in which it can truly be said that as a matter of law, the evidence is not strong enough to uphold such verdicts, findings or judgments. However differently the record evidence may strike different minds, it is evident that the jury trying the issues of fact did not think the evidence was strong enough to overcome the presumption, and it is equally evident that the trial judge, who presided at the hearing of the cause, and who heard the evidence, was of the same opinion when he made the order denying appellant's motion for a new trial. The weight of the evidence and the credibility of the witnesses were matters peculiarly within the duty of the jury to determine, and, having decided the facts against the appellant, and having, it is clearly apparent, in reaching their conclusion, disregarded or discredited the testimony offered by the defendant, we see nothing in the record which would warrant this court in declaring that, as a question of law, their finding is against the evidence.

As we stated in the main opinion, the supreme court, in the case from which we have here quoted the language upon which the appellant so implicitly relies, also uses the following language immediately following that quoted: "Indeed, the Court is not bound to believe an interested witness against such a presumption if the latter satisfies his mind," citing section 2061, subdivision 4, Code of Civil Procedure. The jury and the court appear to have not been satisfied that the evidence overcame the presumption. On the contrary, their minds seem to have been satisfied by the presumption as against the declarations of the witnesses directed against such presumption.

But the learned counsel seems to have formed a total misconception of certain language employed in the main opinion when he says that "it means that it is conceded by reason of the testimony that Walter Morrissey was about to be arrested on a felony charge, and she (the defendant) desired to prevent it," etc. We were discussing the probable specific reasons which might have induced Mrs. Morrissey to sign the note in consideration of forbearance on the part of the plaintiff to institute a civil action against Walter. This discussion was only in reply to the elaborate argument of counsel to the effect that the evidence on the part of the defendant showed threats by the plaintiff of a prosecution of Walter for forgery,

for which reason alone, he argued, the defendant signed the
note.  We stated that in our opinion the evidence fairly war-
ranted the inference that she signed the note upon an under-
standing that the plaintiff would refrain from suing Walter
in a civil action; that (if that were true), while it was not
necessary to search for specific reasons which thus influenced
her, yet it was equally as reasonable as any other deduction
from the evidence that she was almost as much in fear of the
consequences of a civil as of a criminal action, and that that
fact might have been the cause moving her to execute the note
in consideration of forbearance upon the part of the plaintiff
to sue Walter in the civil courts.  It appeared from the un-
contradicted evidence in the record that the plaintiff, at the
first interview with the defendant, exhibited the fourteen notes
to the latter, said to her that she did not know persons bear-
ing the names ostensibly subscribed to the notes, and that such
names could be found neither on the great register nor the tax-
roll of the county.  While this did not involve upon the part
of plaintiff the specific charge of a crime against young Mor-
rissey, the inference was that the transactions represented by
the notes were not altogether devoid of fraud of some sort,
and we ventured the opinion, therefore, that Mrs. Morrissey,
if receiving such an impression, might be nearly as anxious,
under such circumstances, to avoid a civil suit as a criminal
proceeding, realizing that in the former the facts would be
brought before the public as readily as in the latter proceed-
ing.  The plaintiff had a perfect right to sue Walter in a civil
action, not alone upon the note executed by him to her, but
also the right to sue him for money had and received as to
the sums represented by all the other notes, if said notes were
in fact fictitious, subject, of course, to the defense of a bar
under the statute, or to any other legal defense.  If the de-
fendant desired that her son should not be sued in a civil
action and signed the note in dispute in consideration of
such an agreement on the part of the plaintiff, we cannot
see that it would be particularly material to ascertain what the
specific reason was that prompted her desire to prevent the
institution of a civil suit against Walter.  The defendant
might have believed, from her inspection of the notes, or from
any other circumstance brought to her notice, that said notes
were forgeries, the result of the criminal acts of her son; yet,
if the evidence, presumptive and otherwise, fairly warrants

the inference that she was moved to sign the note solely because of an agreement upon the part of the plaintiff that she would not bring a civil suit against Walter, the mere fact of her belief that her son had committed a criminal offense would be, it seems to us, immaterial. All that Mrs. Morrissey said about her son having been accused by the plaintiff of committing forgery and that the latter would prosecute him for the crime was denied by Miss Keating. The jury, as stated in the main opinion, seem to have paid no attention to the testimony of the defendant. But it is enough for us to be satisfied that the evidence, both direct and circumstantial, fairly justifies the conclusion that the consideration for which the note was signed was based upon an understanding that the plaintiff would forbear suing Walter in a civil action; or that the evidence, in the minds of the jury and the judge trying the case, was not sufficient to overcome the presumption of a valid consideration, and that the record before us is not such as would sustain a conclusion by this court that, as a matter of law, the evidence is too weak to support the verdict of the jury and the judgment of the court.

The petition for a rehearing is denied.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 26, 1907.