[L. A. No. 2775.   Department Two.—March 26, 1912.]

## C. C. THOM, Respondent, v. C. P. STEWART, Appellant.

PROMISSORY NOTE—ILLEGAL CONSIDERATION—PROMISE NOT TO PROSECUTE FOR EMBEZZLEMENT.—A promissory note is void as against public morals and public policy, and incapable of enforcement in the hands of an assignee after maturity, when the sole consideration therefor was the promise by a surety for an embezzler, that, if the note were given, it would not prosecute him for the embezzlement.

ID.—CONFLICT OF EVIDENCE—FINDING.—In the present case the evidence, although conflicting, is held to support the finding that the note in question was not given for such illegal consideration.

ID.—PRESUMPTION OF VALID CONSIDERATION—BURDEN OF SHOWING WANT OF CONSIDERATION—CONFLICT OF EVIDENCE AS TO WANT OF CONSIDERATION.—A promissory note is presumed to have been given for a sufficient consideration, under section 1614 of the Civil Code, and in an action thereon the introduction of the note in evidence establishes a *prima facie* right to recover according to its terms. The burden of showing a want of consideration, under section 1615 of that code, is cast upon the person seeking to avoid it, and if he fails to do so, the presumption prevails, and furnishes sufficient evidence to support a finding that the note was given for a good and valuable consideration.

ID.—APPEAL—REVIEW OF EVIDENCE.—Under our code the direct evidence of one witness who is entitled to full credit is sufficient to prove any fact except porjury and treason, and is necessarily sufficient to create a substantial conflict in the evidence regardless of

the number of witnesses or inferences supporting their testimony to the contrary.

ID.—CREDIBILITY OF EVIDENCE IN SUPPORT OF FINDING.—Under the constitutional provisions which limit the jurisdiction of the supreme court as an appellate court to questions of law alone, it is not within its power or function to review conflicting evidence for the purpose of determining whether the trial court should have accepted the testimony of a party against whom a finding is made rather than the testimony upon which the finding is based.

ID.—WHEN EVIDENCE MAY BE REVIEWED ON APPEAL.—It is only in cases where there is no evidence to sustain a finding, or where it can be said, as matter of law, that the evidence is insufficient to sustain it, that the supreme court has jurisdiction to consider the evidence.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. W. R. Hervey, Judge.

The facts are stated in the opinion of the court.

Woodruff & McClure, for Appellant.

Gray, Barker, Bowen, Allen, Van Dyke & Jutten, and Nathan P. Bundy, for Respondent.

LORIGAN, J.—Plaintiff sued defendant to recover judgment on a promissory note for $2750 executed by the defendant to the Metropolitan Bank & Trust Company of Los Angeles and assigned after maturity to plaintiff, and for a sale in satisfaction of the judgment of certain capital stock of the National Sugar Company, pledged by defendant as collateral security for the payment of the note.

The defendant in his answer admitted the execution of the note and set up as an affirmative defense illegality of consideration for its execution, averring that the only consideration therefor was the promise and agreement of the plaintiff, Thom, as agent for the United States Fidelity & Guaranty Company, that if defendant executed the note one Eben C. Crowell, who had been arrested in Arizona for embezzling twenty-five hundred dollars from the United States Custom House at Nogales while acting as cashier thereof, would not be prosecuted for said embezzlement by said company, which stood as guarantor to the United States government, for any loss sustained through the dishonesty of said Crowell.

Judgment was entered in favor of the plaintiff and from it and an order denying his motion for a new trial defendant appeals.

The court found generally that the promissory note was given by defendant to the assignor of the plaintiff for a good and valuable consideration and that the averment in the answer that it was given to said assignor on the promise or agreement of the United States Fidelity & Guaranty Company that it would not cause said Crowell to be prosecuted for said embezzlement was untrue.

There can, of course, be no question of the principle of law under which this defense was interposed by defendant or which would apply had the court found upon it in his favor.

Any agreement or contract, the consideration of which is immoral or unlawful is void, and a promissory note based upon such a consideration as was claimed by defendant is void as against public morals and public policy and is incapable of enforcement.

The main questions involved on this appeal are whether the findings of the court that the note was supported by a good consideration and against the defense of illegality of consideration are sustained by the evidence.

The admitted facts are that the United States Fidelity & Guaranty Company (to be hereafter referred to as the Guaranty Company) had issued a fidelity bond to the United States on behalf of E. C. Crowell as custom house cashier at Nogales, Arizona; that Crowell was indicted on February 18, 1908, for the embezzlement of twenty-five hundred dollars of custom house funds, arrested and confined in jail at Tombstone, Arizona, and was being prosecuted by the United States government, the Guaranty Company taking no part in the prosecution.

Crowell and defendant were friends of many years' standing, had known each other in Arizona, the defendant prior to coming to Los Angeles having resided in Nogales. Crowell, after his arrest and previous to the day his case was set for trial, which was a few months thereafter, had written several letters to the defendant asking him to furnish the money necessary to cover the amount he was charged with having embezzled so as to prevent him from being sent to the Yuma penitentiary for a term of years. The note in question was

executed by defendant to the bank on April 20, 1908, and on the same day the money was telegraphed by the Guaranty Company to a bank in Nogales and paid over to the United States government. On the next day—April 21st—the date set for his trial, Crowell pleaded guilty and on April 24th was sentenced to one year in the territorial prison of Arizona. At the time the note was executed by the defendant plaintiff Thom resided in Los Angeles, and as shown by his testimony, was associated with the Guaranty Company, not as its general agent, but as representing the company, although in what particular capacity does not appear. He was at the same time in the employment of the bank, which was agent for the Guaranty Company, and the note in question was made payable to the bank as the representative of the Guaranty Company which was the real beneficiary. On the Saturday prior to the day set for the trial of Crowell, a special agent of the Guaranty Company (Galbraith by name) temporarily in Tombstone and who knew Crowell well, called upon him at the jail. Crowell said he had tried to raise the money to reimburse the government but without success; that he had received a letter from Stewart stating that he had no money, but had some National Sugar Company stock; that he (Crowell) had tried all his friends and that Galbraith was the only one who could help him. Crowell further told Galbraith that if the money was paid into the bank before the trial came off that he intended to plead guilty and was informed by his attorney that if the money was so paid before sentence it was customary to shorten the sentence by several years and that this was the reason he wanted to get the money paid before sentence. After leaving Crowell Galbraith immediately sent the following telegram to Los Angeles: "F. M. Kelsey, Metropolitan Bank, Los Angeles. Get Johns and A. P. Stewart, Security Building, together on telephone immediately. Crowell loss." It does not appear who Johns was. Galbraith also wired to C. F. Fuller, connected with the Guaranty Company at Los Angeles, asking him to see that Kelsey got the telegram, and to assist him in looking up the defendant. On Monday following the date of the execution of the note in question Galbraith got a telegram from San Francisco that the money had been wired to the First National Bank of Nogales. As stated by the witness Galbraith, "the

reason the loss was paid immediately and sent down there by
wire to Nogales and used under the solicitation of Mr. Crowell
and his attorney, was that when the case came up the attorney
might tell the judge that the loss had been made good"; that
the reason the note was given to the company by Mr. Stewart
was to reimburse the money that Mr. Crowell had taken; that
when a person bonded by the United States Fidelity &
Guaranty Company defaults, the company "takes no steps ex-
cepting to put the prosecution on the holder of the bond."

As to the testimony relating to the actual execution of the
note by defendant Stewart and the directly attendant cir-
cumstances.    The defendant testified that on Monday morn-
ing, the day of the execution of the note, when he came to his
office in Los Angeles, he found a message left by Fuller on the
Saturday previous asking him to call upon him.    He went to
the office of Fuller in the Pacific Electric building and one
of the clerks (Fuller being absent) told him that Fuller
wanted him to go to the Metropolitan Bank and see Mr. Thom,
the plaintiff.    Defendant did so, telling Thom, that Fuller
had left a card saying that he (Fuller) wanted to see him
about Crowell in Tombstone; that he had not found him in
his office, but had been instructed by the clerk that Fuller
wished him to call upon Mr. Thom.    Thom informed him
that the manager of the company in San Francisco wanted to
talk with him about the matter and called up the latter for
that purpose upon the telephone.    Thom stated to the man-
ager that the defendant was in the office and asked him whether
he wanted to talk to him, to which the the manager evidently
responded in the negative, because while Thom and the man-
ager were talking, defendant asked Thom if he should talk
to the manager and Thom said "no, that it was all right; I
got all the information."    During his conversation with the
manager Thom made some notes, apparently with reference
to the subject of the conversation.    Defendant further testi-
fied that after the conversation between the manager and
Thom, the latter told him that the company wanted him to pay
what Crowell had taken and if he did they would not prose-
cute Crowell; that he told Thom he was not prepared to pay
the money and the latter asked if he could give a note with
collateral security, which defendant said he could and would
do; that he asked Thom if the Guaranty Company was the only

CLXII Cal.—14

one prosecuting Crowell and was told by him that to the best of his knowledge it was. Defendant then testified: "So I agreed to give a note for $2750 so that Crowell would not be prosecuted and sent to the penitentiary; and I signed a note at that time and he told me that it would be all right. . . . At that time Mr. Thom agreed that the Guaranty Company would not prosecute Mr. Crowell if I would give the note. . . . He did not agree that no one else would prosecute him. He stated that he did not know of any one else that was prosecuting him."

After the execution of the note defendant sent a telegram to Crowell stating that the matter had been settled up and the note signed.

Some months afterwards, and subsequent to the sentence of Crowell the defendant took a business associate of his— Dr. C. S. Hutchinson—to the bank with the declared purpose of procuring an admission from Thom that the note was given in consideration that Crowell would not be prosecuted by the Guaranty Company, and testified that Thom then and there in the presence of Dr. Hutchinson admitted that this was true. Dr. Hutchinson was called as a witness by the defendant, and after stating that he accompanied Mr. Stewart to the bank, the only material testimony given by him was: "Mr. Stewart asked Thom what they were going to do about his note, and he said—he told Mr. Thom that he understood that they would not prosecute Mr. Crowell down in Arizona; and Mr. Thom said that so far as they were concerned that they would not prosecute him, and I said to Mr. Thom 'well, then, didn't you tell Mr. Stewart you would not prosecute him or he would not be prosecuted if this note was put up,' and he said, 'so far as we are concerned we will not prosecute him,' and that he (defendant) would have to take it up with the San Francisco office in order to have anything done about this note."

The plaintiff Thom in his own behalf testified: "At no time did I ever say to Mr. Stewart that if he executed the note to the Metropolitan Bank & Trust Company, delivering the collateral security therefor, that the United States Fidelity & Guaranty Company would not prosecute Eben C. Crowell"; nor did he state at any time to Stewart in the presence of Hutchinson that the Fidelity & Guaranty Company, or "we" would not prosecute Crowell. Further he testified: "I don't know

of my own personal knowledge what the consideration of the note was. . . . The reason for sending for Stewart was upon the telegraphic suggestion from our special agent Charles D. Galbraith. . . . I never saw Mr. Stewart before he came to our office. . . . I do not know whether Mr. Crowell embezzled any money at Nogales or not, and neither the company nor any of its representatives ever notified me prior to this transaction that Eben C. Crowell had embezzled any money. The telegram received by me from Mr. Galbraith was the only word I had prior to the sending of the note. . . . I would like to have it understood how my position in this matter was. I knew absolutely nothing until after the transaction was completed. I knew absolutely nothing more than what was contained in that telegram excepting a few brief facts given to me over the phone."

This was all the evidence offered by the parties respecting the circumstances under which the note was executed.

The legal situation under the pleadings and evidence is this: Plaintiff pleaded the execution of the note and defendant in his answer admitted such execution and set up as an affirmative defense against its validity and his liability on it that the consideration for its execution by him was illegal. Under this state of the pleadings when the plaintiff upon the trial offered the note and the court admitted it in evidence and plaintiff thereupon rested his case, *prima facie* proof of the right of plaintiff to recover upon the note according to its terms was established, because under the Civil Code (sec. 1614) a written instrument is presumptive evidence of a consideration. This, of course, is a disputable presumption but as a presumption, it is sufficient evidence of a consideration and must be accepted as such unless it is overcome by evidence to the contrary and "the burden of showing a want of consideration sufficient to support an instrument lies with the party seeking to invalidate or avoid it." (Civ. Code sec. 1615.) This burden the defendant assumed in his answer and attempted to support by his evidence. The court found, however, that this claim of defendant was not sustained by a preponderance of the evidence. Therefore, the presumption prevailed and furnished sufficient evidence for the finding of the court that the note was given for a good and valuable consideration.

We are asked by appellant to review the evidence and hold that the finding of the court against his defense of illegality of consideration was not sustained by it. But the evidence on the subject is in substantial conflict. There is, on the one hand, the positive statement of the defendant that the promise was made by the plaintiff and on the other hand as equally a positive denial by the plaintiff that any such promise was made. Of course, counsel for appellant admits this conflict but contends that it is not a substantial conflict, the position taken by him being that in addition to the statement of the defendant as to the promise his statement is corroborated by Dr. Hutchinson and is further so strongly supported by reasonable inferences and probabilities to be drawn from all the evidence in the case that the testimony of the plaintiff should have been ignored by the trial court as a mere pretense of evidence and improbable. It can hardly be claimed that the testimony of Dr. Hutchison corroborated that of the defendant. He did not testify that the plaintiff had admitted making such a promise. But assuming that Dr. Hutchinson's testimony does corroborate defendant and that there are inferences and deductions which upon a consideration of all the evidence support the testimony of the defendant, still it cannot be said that for these reasons there is any inherent improbability in the statement of plaintiff or that it amounted to a mere semblance of evidence. It was a square denial that any such promise as defendant claimed to have been made by him was made. It was the testimony of a reputable witness bearing upon the direct fact in issue. Under our code the direct evidence of one witness who is entitled to full credit is sufficient to prove any fact except perjury and treason, and is necessarily sufficient to create a substantial conflict in the evidence regardless of the number of witnesses or inferences supporting their testimony to the contrary. This is the situation here. It was the exclusive province of the trial court to determine the credibility of the witnesses, the weight and effect to be given to the evidence, to consider inferences reasonably deducible from it, and from the conflicting evidence determine the disputed fact. All the considerations urged here by appellant respecting the evidence in this case were proper to be addressed to and considered by the trial court, but where, out of the conflicting evidence that court has de-

termined the fact and there is evidence to sustain it, this court on appeal cannot review or interfere with its conclusion. Under the constitutional provisions which limit the jurisdiction of this court as an appellate court to questions of law alone, it is not within its power or function to review conflicting evidence for the purpose of determining whether the trial court should have accepted the testimony of a party against whom a finding is made rather than the testimony upon which the finding is based. It is only in cases where there is no evidence to sustain a finding or where it can be said, as matter of law, that the evidence is insufficient to sustain it that this court has jurisdiction to consider the evidence. This has been so distinctly pointed out by decision after decision of this court, commencing with *Payne* v. *Jacobs,* 1 Cal. 39, up to *Fowden* v. *Pacific Coast S. S. Co.,* 149 Cal. 151, [86 Pac. 178], and further reiterated in subsequent decisions (*Estate of Moore, ante,* p. 324, [122 Pac. 844]), that it is matter of surprise that it is not more fully appreciated.

As under section 1614 of the Civil Code, the burden of proof was cast upon the defendant to overcome the presumption of sufficient consideration arising from the execution of the note, the finding of the court of which he complains is tantamount to a finding that there was not a preponderance of the evidence produced by him to sustain the burden. Failing in this, the presumption of a sufficient consideration which the law raises from the execution of the note required the further finding made by the court that the note was given for a good and valuable consideration.

In *Keating* v. *Morrissey,* 6 Cal. App. 163, [91 Pac. 677], where a petition for a hearing here after judgment in the district court of appeal was denied, the principal matters considered here are fully discussed. That action was on a promissory note, the defense being that the note was given on the promise of the plaintiff not to prosecute the son of defendant for forgery. There it was held that the denial by plaintiff of defendant's statement that the note was given to avoid a criminal prosecution for felony, raised a sufficient conflict in the evidence to preclude the appellate court interfering with the verdict in favor of the plaintiff and that the presumption of consideration arising from the execution of the promissory note itself was sufficient to sustain the verdict.

There is so much of the opinion in that case directly pertinent to the questions involved here that space will not permit of our quoting from it, and hence, we content ourselves with a reference to it.

The judgment and order appealed from are affirmed.

Henshaw, J., and Melvin, J., concurred.