[Civ. No. 1023. Third Appellate District.—June 16, 1913.]

A. B. ESTES, Respondent, v. S. T. BALLARD et al., Appellants.

PROMISSORY NOTE—WANT OF CONSIDERATION—PRESUMPTION AND BURDEN OF PROOF.—One who challenges the validity of his promissory note on the ground that it is unsupported by a consideration is at the outset confronted with the presumption of law that the instrument is so supported, and has the burden of affirmatively showing a failure of consideration.

ID.—PRESUMPTION OF CONSIDERATION—FORCE AND EFFECT.—While the presumption of consideration is one which is subject to be disputed or rebutted by other evidence, it is itself evidence which may be sufficient to satisfy the minds of those who must decide the questions of fact, even against positive testimony of witnesses against it.

ID.—DISPUTABLE PRESUMPTIONS—NATURE AND EFFECT.—Disputable presumptions are allowed to stand, not against the facts they represent, but in lieu of proof of the facts, and when the fact is proven contrary to the presumption no conflict arises, but the presumption is simply overcome and dispelled. Against a proved fact, or a fact admitted, a disputable presumption has no weight, but where it is undertaken to prove the fact against the presumption, it still remains with the jury to say whether or not the fact has been proven; and, if they are not satisfied with the proof offered in its support, they are at liberty to accept the evidence of the presumption.

ID.—NOTE GIVEN FOR CONVEYANCE OF LAND FOR RAILWAY—DEFENSE OF FAILURE OF CONSIDERATION.—Where a promissory note is given to a person as an inducement for him to convey land to a railway company to obtain an extension of its line, proof that the land is conveyed to an officer of the corporation rather than to the company

itself does not overcome the presumption of law that the note is founded upon a consideration, in the absence of further evidence that the company did not take the beneficial interest in the conveyance, or that the land was not used for the purpose of inducing the company to extend its road.

ID.—EFFECT OF FAILURE OF MAKERS TO OBJECT TO VALIDITY OF NOTE.— If the makers of the note did not object to the validity of the note at the time of its execution, nor for a long time thereafer, this is a circumstance from which it may be inferred that they were perfectly familiar with what plainly appears to be the true import of the deed, that the conveyance to the officer was in trust for the corporation, and that the latter became the real beneficial owner of the land by virtue of that conveyance.

ID.—FRAUD AS DEFENSE—NECESSITY OF PLEADING FACTS.—Fraud on the payee's part cannot be urged as a defense to the note, if the defendant does not allege in his answer the facts constituting the fraud.

APPEAL from a judgment of the Superior Court of Modoc County.   Clarence A. Raker, Judge.

The facts are stated in the opinion of the court.

N. A. Cornish, and E. C. Bonner, for Appellants.

F. M. Jamison, for Respondent.

HART, J.—This is an action to recover upon a promissory note, alleged to have been executed in favor of the plaintiff by the defendants for the sum of five hundred and fifteen dollars.

The action was tried by the court, without a jury, and the plaintiff was given judgment for the sum of $776.33, the amount of the principal and the accumulated interest thereon.

This appeal is by the defendants from the judgment, supported by a transcript of the testimony made up in accordance with the provisions of section 953a of the Code of Civil Procedure.

The answer, as originally filed by the defendants, admitted the execution of the note and the purpose for which it was made and delivered to the plaintiff, but denied the legal validity of the instrument by setting up, by way of a special defense in avoidance thereof, that it had been procured by the plaintiff through misrepresentation and fraud as to the con-

sideration therefor. To this answer a demurrer was sustained and the defendants thereupon filed an amended answer, in which they directly set up a failure of consideration for said note in this: That, at the time they executed and delivered to the plaintiff the note in question, an oral agreement was had between them and the plaintiff, whereby the latter agreed that, as the sole consideration for said note, he would immediately execute and deliver to the Nevada-California-Oregon Railway Company, a corporation, a good and sufficient deed, conveying to said corporation a certain tract of land of forty acres, situated near Alturas, Modoc County; that the plaintiff "has utterly failed, neglected and refused, and still neglects and refuses to execute and deliver said deed of said land to said corporation, and the said plaintiff has never, at any time, fulfilled or performed his agreement to transfer the title to said tract to said corporation, and has thus failed to perform that part of his contract, which was the sole consideration for said note and the renewal thereof."

Upon the issues thus framed and the evidence addressed thereto the cause was submitted for decision.

The undisputed facts of the transaction out of which the note in question is the outgrowth are these: In the year 1907, the terminus of the main line of the railroad corporation above mentioned was at a station or town called Likely, in Modoc County. Desiring to extend its said line from Likely to Alturas, a distance of over twenty miles, the company proposed to the citizens of the latter town that, if they would donate to the company certain water-rights and the land described in the answer, said land to be used for the erection thereon of a depot, switches, shops, round houses, stock yards, etc., it would cause such extension of its road to be made. In pursuance of the proposition so submitted, the chamber of commerce of the town of Alturas proceeded to take steps looking to the consummation thereof, and to that end, having received an offer from the plaintiff, the owner of the land which was desired for the purpose, to sell the same for the sum of twenty thousand dollars, called upon the citizens of Alturas to raise said sum of money by voluntary contributions. In furtherance of this scheme, the chamber prepared a subscription paper, the preamble to which, after minutely reciting the purpose for which the money was to be

contributed, the purpose for which the water-rights and land were to be used, that Modoc County generally "will be greatly benefited by said extension of said main line of railroad and the people of Alturas (the county seat) and of Modoc County generally can well afford to give the assistance aforesaid and thereby secure this great benefit," that "it will greatly enhance the value of our property and make the county more prosperous," and that "without such money we cannot secure such extension of said main line of railroad", concluded with the following agreement upon the part of those who might subscribe thereto: That they would pay to the chamber of commerce of Alturas, on or before the fifteenth day of August, 1907, the amounts set opposite their respective names on said subscription paper, "for the purpose of giving the above specified assistance, and to assist said railroad company in extending its main line of railroad," the money so contributed "to be used and applied by it in the purchase of said lands and water-rights, for the purpose of assisting said Nevada-California-Oregon Railroad Company to build to and into the corporate limits of Alturas." This document was signed by a large number of people pledging the payment of various sums for the purpose specified therein and among those so subscribing their names were the defendants who signed the instrument jointly and thus evidenced their agreement to contribute and pay to the chamber the sum of five hundred dollars.

It appears that one George A. Duke was one of a committee appointed by the chamber of commerce to solicit and obtain financial aid for the purpose mentioned, and that, after the defendants had subscribed their names to the subscription paper, the latter executed their joint and several promissory note in favor of the plaintiff and delivered it to said Duke, to be by him or the committee of which he was a member, as above stated, used in purchasing the property referred to in the answer. This note was dated September, 18, 1907, and was made payable six months after date, together with interest at the rate of six per cent per annum until paid. Upon receiving said note, the plaintiff executed and delivered to J. B. Estes and George A. Duke a receipt, dated "Alturas, Nov. 6, 1907," which is in the following language: "Received from Com. J. B. Estes and Geo. A. Duke, twelve

hundred and no/100 dollars, for forty acres of land, paid as follows: Bonner & Ballard, note for $500.00; J. H. Derevan, note for $100.00; A. B. Estes, note, $250.00, and check No. 88 for $350.00

"$1200.00.                 Signed, A. B. ESTES."

On the eighteenth day of March, 1908, neither the principal of said note of Bonner & Ballard nor the accrued interest thereon having been paid, the defendants, desiring an extension of time within which to pay it, executed and delivered to the plaintiff, with the latter's consent, a new note in lieu of the original note, for the sum of $515.00 representing the principal sum of said former note and the interest which had accumulated thereon. The new note was, by its terms, to mature on or before the first day of September, 1909, and it is this note which constitutes the subject of this action.

The land described in the answer was, by deed, "made on the 30th day of September, 1907," which deed was acknowledged on the 6th day of November, 1907, and recorded on the twenty-first day of April, 1908, conveyed by the plaintiff to one J. F. Dunaway, "V. P. and Gen. Mgr., the party of the second part."

On the twentieth day of April, 1908, said Dunaway, "V. P. and Gen. Mgr.," executed a deed, which was acknowledged on the twenty-fifth day of April, 1908, and recorded on the eighth day of July, 1908, conveying said land to Geo. S. Oliver, "Trustee," reserving therefrom, however, "a strip of land 60 feet in width for a right of way for the Nevada-California-Oregon Railway, as the same is now located through, over and across the above described lands in the S. W. ¼ of the S. W. ¼ of said sec. 12, and right of way to be and extend in width 30 feet on each side of the center line of said railway."

Thereafter, Dunaway, "V. P. and Gen. Mgr.," Geo. S. Oliver, Trustee, both of Reno, Nevada, B. F. Lynip and A. B. Estes, both of Alturas, California, as parties of the first part, conveyed to A. E. Pearson and G. F. Bigley of Alturas the land in question, reserving therefrom a tract six hundred and sixty feet square and the strip fifty feet wide for a right of way for said railroad corporation. This deed purports to have been made on the third day of June, 1909, was acknowledged by Oliver, Lynip, and Estes on said date and by Duna-

way on the tenth day of June, 1909, and recorded on the third day of July, 1909.

On the sixth day of July, 1909, Pearson and Bigley conveyed the land to the Alturas Heights Company, a corporation, reserving the tract of six hundred and sixty feet square and the strip for a right of way for the railroad company as described in the deed to Pearson and Bigley.

The contention of the defendants is, as is to be implied from their answer, that the failure of the consideration for the note lies in the failure of the plaintiff to convey the land in question to the railway corporation.

As one who challenges the validity of his promissory note on the ground that it is unsupported by a consideration is at the outset confronted with the presumption of law that the instrument is so supported (Civ. Code, sec. 1614, and Code Civ. Proc., sec. 1963, subd. 21), it follows that the burden was cast upon the defendants in this case to affirmatively show a failure of the consideration for which the note sued on was given. (*Keating* v. *Morrissey*, 6 Cal. App. 163, [91 Pac. 677] ; *Thom* v. *Stewart*, 162 Cal. 413, 421, 422, [122 Pac. 1069].) And, while the presumption of consideration is one which is subject to be disputed or rebutted by other evidence, it is itself evidence which may be sufficient to satisfy the minds of those who must decide the questions of fact. "Indeed," says the supreme court in *Adams* v. *Hopkins*, 144 Cal. 19, 36, [77 Pac. 712], "the court is not bound to believe *an interested witness* as against such a presumption if the latter satisfies his mind." Speaking of disputable presumptions, the supreme court, by Mr. Justice Henshaw, in *People* v. *Milner*, 122 Cal. 171, 179, [54 Pac. 833], with the clarity usual to the judicial expressions of that learned jurist, defines the probative function and power with which the law invests such presumptions as follows: "By section 2061, subdivision 2, of the Code of Civil Procedure, jurors are to be instructed 'that they are not bound to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number or against a presumption or other evidence satisfying their minds.' In this is a distinct recognition of the facts: 1. That a presumption is evidence; and 2. That it is evidence which may outweigh the positive testimony of witnesses against it. It has been said that disputable pre-

sumptions are allowed to stand, not against the facts they represent, but in lieu of proof of the facts, and that when the fact is proven contrary to the presumption no conflict arises, but the presumption is simply overcome and dispelled. (*Savings etc. Soc.* v. *Burnett,* 106 Cal. 514, [39 Pac. 922].) This is true. Against a proved fact, or a fact admitted, a disputable presumption has no weight, but where it is undertaken to prove the fact against the presumption, it still remains with the jury to say whether or not the fact has been proven; and, if they are not satisfied with the proof offered in its support, they are at liberty to accept the evidence of the presumption." (See, also, *Keating* v. *Morrissey,* 6 Cal. App. 163, [91 Pac. 677].)

In order to have overcome the presumption of consideration, or, which is the same thing, to have shown a failure of consideration in this case, it was incumbent upon the defendants to prove that the land was not in any sense or in fact conveyed to the railroad company, or that, having been ostensibly conveyed by the plaintiff to some one other than the company, it was not used for the purpose of inducing the corporation to extend its road to Alturas. The defendants did not make a showing by direct proof that the land was not conveyed to the company, or, in other words, that said company did not take the beneficial interest therein by the conveyance to Dunaway. They seem to assume, however, that the deed, purporting to convey the land to Dunaway and not to the corporation, itself and upon its face constitutes conclusive evidence of the failure of the plaintiff to perform his agreement to convey the property to the corporation and that thus the legal presumption favorable to the legality of the note, so far as the consideration is concerned, has been dispelled. But, while the circumstance that the conveyance was, *eo nomine,* to Dunaway is, of course, some evidence tending to establish their claim that the plaintiff failed to carry out the agreement to transfer the land to the corporation, it is by no means conclusive of that fact, nor was the trial court even obliged to accept it as against the presumption that the consideration for the note was executed and thus at all times maintained its integrity. However, giving the circumstance the full benefit of the evidentiary value to which the defendants assume it to be entitled in proof of the failure of the consideration, and

that it would be sufficient, in the absence of any other evidence upon the question, to satisfactorily overcome the presumption of a consideration, still the record reveals circumstances which strongly support the presumption and which, therefore, stand in opposition to the result to which the defendants claim that the circumstance of the transfer of the land to Dunaway rather than to the corporation must inevitably lead.

As has been shown, the testimony discloses that the land which was to be purchased by the citizens of Alturas through the chamber of commerce of that town and donated to the railway company named was deeded to "T. F. Dunaway, V. P. and Gen. Mgr.," and it further shows that, at the time said land was so purchased and conveyed, Dunaway, the nominal grantee, held the dual position of vice-president and general manager of said corporation. From these circumstances the court was justly authorized to draw the inference that the abbreviations immediately succeeding Dunaway's name in the deed not only meant "vice-president and general manager," but that they mean in the connection in which they were so used vice-president and general manager of the said railroad company, and that the conveyance was therefore to him *as* such official of said company and not to him in his individual right. There was no testimony showing any reason why Dunaway should have been described in the deed as "V. P. & Gen. Mgr." except that disclosing his official title as an officer of the railway company to be that of "vice-president and general manager."

If any more than the foregoing circumstances were required to establish the fact that the conveyance of the real property in question to the general manager of the corporation as such general manager was intended to and did in fact amount to a transfer of the property to the corporation itself, the circumstance that the company did extend its main road from Likely to Alturas and the further circumstance that, in so doing, it used a part of the land in question for its right of way into the latter town, may well be referred to. Furthermore, the plaintiff testified that his understanding was, at the time he executed the conveyance to Dunaway, that the latter was to take the title in his name as the official representative of the corporation and not for himself individually. And there is another circumstance of no inconsiderable significance

in this connection, and that is the fact that at no time, until long after the deed was executed, delivered, and recorded, did the defendants raise any objection to the legal validity of the note upon any ground or for any reason, and it may fairly be inferred from that circumstance that they were perfectly familiar with what plainly appears to be the true import of the deed, that the conveyance to Dunaway was in trust for the corporation and that the latter became the real beneficial owner of the land by virtue of that conveyance.

But we perceive no necessity for further reviewing the evidence or elaborating upon the significant considerations arising therefrom which must lead to the conclusion that the court's finding in favor of the legal validity in all respects of the note declared upon is clearly sustained. Indeed, our own opinion is that the evidence wholly fails to support the claim of a failure of consideration. At all events, the least that can be said of the testimony is that there is created therein upon the question of consideration a conflict of the most substantial character, which, after all, merely means that the defendants have fallen far short of overcoming the presumption that the note was at all times supported by a valid and a sufficient consideration.

The discussion in the briefs of the proposition that there was not a valid consideration for the note for the reason that the agreement by the plaintiff to convey the land was oral or not committed to writing is altogether beside any issue presented or developed by this record. The answer admits the execution and the delivery of the note, and, while it is not necessary here to decide the question whether or not it was requisite, under such circumstances, to specially plead the statute of frauds in order to justify the reception of evidence disclosing that the consideration for the note consisted of an executory agreement which cannot be proved unless it be in writing, it is nevertheless a significant circumstance, if the intention was to invoke that defense, that the execution and the delivery of the note should be admitted and at the same time the answer contain nothing to indicate reliance upon the statute as a bar to a recovery upon the instrument. However, the claim that the agreement to convey is invalid because not reduced to writing could not, in any event, be sustained, since, as shown, said agreement and consequently the con-

sideration was executed long before this action was instituted or before any exception was made or interposed to the legal validity of the note. In fact, the particular note pleaded in the complaint was made and delivered to the plaintiff as the payee thereof after the execution and delivery of the deed by the plaintiff to Dunaway, as vice-president and general manager of the railroad company.

Nor, under the circumstances disclosed here, can the point, argued at length by the defendants, that the evidence shows that the plaintiff still retained fraudulently, it is claimed some interest in the land conveyed to Dunaway after the deed to the latter was made and delivered and that, therefore, the precise conveyance agreed to be made was not actually made, operate to defeat the plaintiff's right to a recovery or to avoid the effect of the judgment herein. This point is based upon the fact, brought out at the trial, that Dunaway, shortly after the property in question was conveyed to him, conveyed it to other parties, who finally transferred it to the Alturas Heights Company, a corporation, and that the plaintiff, about two years after parting with title to the property, became a stock holder in and president of said corporation. The conclusion which the defendants insist necessarily follows from the transactions involving the several conveyances thus referred to is that the plaintiff, as a matter of fact, never divested himself of title to the property, that the conveyance to Dunaway was not *bona fide* and, in short, that all the transactions involving the land in question were the constituents of a fraudulent scheme whereby the plaintiff and others were enable to secure money from the defendants and other citizens contributing the money with which to purchase the land for the pretended purpose of donating it to the railroad company in consideration for the extension of its road to Alturas.

In the first place, it is to be observed that the defendants, in their amended answer, do not set up fraud as a ground upon which they undertake to vitiate the legal force of the note sued on, and, manifestly, to avail themselves of such defense, it was requisite for them to plead the facts constituting the fraudulent acts upon which they intended to rely. The answer, as seen, merely alleges that the plaintiff failed to carry out the executory agreement which constituted the consideration for the note and that, therefore, there was a

22 Cal. App.—23

failure thereof. It does not charge, either directly or by necessary inference, specific fraud in the alleged failure of the plaintiff to execute his agreement. And if it could be said that it does inferentially so charge, the fraud thus set up is not the fraud involved in the point under consideration.

In the second place, the plaintiff's testimony that he absolutely parted with all title to the land when he conveyed it to Dunaway, that at that time he did not expect to acquire any interest in it again and that he did not become interested in the corporation which finally became the owner of it until two years after such transfer of the land, is amply sufficient to sustain a finding against the claim of the alleged fraudulent scheme which is the subject of the point under present review.

We have found no just reason for disturbing the judgment and it is, therefore, affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court after judgment in the district court of appeal, was denied by the supreme court on August 15, 1913.