[Civ. No. 1301.    Third Appellate District.—December 3, 1914.]

## EMMA M. DUNLAP, Appellant, v. SUNSET LUMBER COMPANY (a Corporation), et al., Respondents.

ACTION TO CANCEL NOTE AND DEED OF TRUST—DEED OF TRUST ON WIFE'S PROPERTY—SUFFICIENCY OF CONSIDERATION.—Where a wife joined her husband in the execution of a promissory note and executed a deed of trust upon her separate property to secure its payment, under a transaction between her husband and certain persons interested in the corporation to which the note was given, by which transaction the husband assumed, in consideration of the transfer to him of one-third of the capital stock of another corporation in which such persons held the majority of the capital stock, the payment of an existing indebtedness of the latter corporation to the former corporation, the note and deed of trust were supported by a sufficient consideration, although the wife did not receive any of the stock; and the wife did not by the transaction merely become a surety of the debtor corporation for the extinguishment of its antecedent obligation to the other corporation.

APPEAL from a judgment of the Superior Court of Alameda County.    T. W. Harris, Judge.

The facts are stated in the opinion of the court.

Sterling Carr, for Appellant.

C. L. Colvin, for Respondents.

HART, J.—The plaintiff brought this action for the purpose of securing a decree canceling a certain promissory note and a certain deed of trust, said note having been executed in favor of and delivered to the defendant corporation by her and her husband, and said deed of trust executed by her to secure the payment of said note.

The sum and substance of the allegations of the complaint is that the note in suit was and is not, so far as the plaintiff is concerned, supported by a consideration.

The defendants answered the complaint, specifically denying each and all of its material averments, and also filed a cross-complaint, setting forth the facts constituting a history of the transaction leading to this action and declaring that the trustees under the deed had in accordance with the terms

of said deed, sold the property which was the subject of said deed at public auction for the sum of two hundred and seventy-five dollars, the highest bid offered for the same, and that, after paying the legal expenses of said sale, the said trustees paid the balance of the sum so received, to wit: the sum of one hundred and thirty-five dollars, to the defendant corporation and that said sum was by it applied to the debt, to secure the payment of which the note and the trust deed in controversy were executed.

The prayer of the cross-complaint is that judgment be awarded the defendant corporation against the plaintiff that "she take nothing by this action, and that this defendant may have judgment against the plaintiff, Emma M. Dunlap, and defendant, George T. Dunlap, for the sum of $5,060.60, with interest," etc.

Judgment was rendered and entered in favor of the Sunset Company and against the plaintiff and the defendant, George T. Dunlap, in accordance with the prayer of the cross-complaint. The plaintiff appeals from said judgment, supporting said appeal by a transcript of the testimony prepared in pursuance of the provisions of section 953a of the Code of Civil Procedure.

The principal point made by the plaintiff is that the findings are not supported by the evidence.

The action grows out of a transaction whereby George T. Dunlap, the husband of the plaintiff, became the owner of one-third of the capital stock of the Clayton Advertising Company, a corporation, which was, at the time said transaction took place, engaged in the business of "out-door" advertising in the city of Oakland.

It appears that said Clayton Advertising Company was, prior and down to the date of the note in question (December 9, 1909) indebted to the defendant, Sunset Lumber Company, on an open account, in the sum of $4,816.84, for goods, wares, and merchandise sold and money advanced to the first named company.

It further appears that certain persons who were connected in official capacities with the defendant corporation were stockholders and members of the board of directors and officers of the Clayton Company. These persons were E. H. Nash, J. E. Neal, and C. S. Lamb, and were, respectively, the general manager, the bookkeeper, and the sales manager of

the Sunset Company. They, with one C. L. Clayton, held all of the issued capital stock of the Clayton Company. Neither the plaintiff nor her husband, George T. Dunlap, was in any way connected with either of said corporations prior to the execution of the promissory note in question, nor was the plaintiff at any time, either prior or subsequent to the ninth day of December, 1909, the date of said note, an officer, a director of, or a stockholder in the Clayton Company. While this indebtedness of the Clayton Company to the Sunset Company still existed, negotiations were had between the said George T. Dunlap and the above named stockholders of the former concern, who, as seen, were also connected with the Sunset Company, which resulted in an agreement whereby one-third of the capital stock of the Clayton Company was to be transferred to said Dunlap in consideration of the payment by Dunlap of the debt due from the Clayton Company to the Sunset Company. Pending these negotiations and before they were consummated, however, Dunlap presented the proposition to his wife (the plaintiff) and requested her to join him in the execution of a promissory note in favor of the Sunset Company for the amount of said debt and at the same time asked her to make and execute the deed of trust in question to secure the payment of said note. Mrs. Dunlap assented to this proposition, and, accordingly, joined her husband in the execution of said note and made the deed of trust, which latter instrument covered a city lot, situated in the city of Oakland, and which lot was at all times her sole and separate property, the same having been purchased by her with money obtained through the estate of her deceased father.

After the delivery of said note and the execution and delivery of said deed of trust, certain shares of the stock of the Clayton Company were transferred to George T. Dunlap. The plaintiff, as before stated, did not then, nor at any other time, become a stockholder in said company.

The note above mentioned was given directly to the Sunset Company. The defendants, E. H. Nash, J. E. Neal, J. R. Pereira, Jr., and George T. Dunlap were, except the last named defendant, trustees under the deed of trust and as such were proceeded against as necessary parties.

The specific contention of the plaintiff is, stating it in the language of her counsel, that since, "according to the find-

ings, the note and the trust-deed were not made or delivered until long after the obligations of the Clayton Company to the Sunset Company arose and became due and payable,'' and, since ''said promissory note formed no part of the original transaction between these two companies, Mrs. Dunlap became but a surety for the antecedent obligation of the Clayton Company and that as such surety it was necessary that a valid consideration pass between herself and the Sunset Company to hold her upon the note in suit; that Mrs. Dunlap did not become the surety of her husband, as there was no obligation of any kind due from her husband to the Sunset Company or to the Clayton Company.'' Hence, it is contended, there was, in the execution of said note by the plaintiff, no consideration moving to her from either of said companies, or from her husband. It follows, so the argument proceeds, that the findings, which accord with the theory of the defendants that the transaction whereby one-third of the capital stock of the Clayton Company was transferred to George T. Dunlap involved a sale of said stock to the latter in consideration of the assumption by him of the payment of the debt due the Sunset Company from the Clayton Company, are not supported by the evidence.

After making findings negativing certain averments of the complaint, the court made the following finding, which is reproduced here in full because it involves a statement of all the ultimate facts essential to the support of the judgment:

''That on or about the — day of December, 1909, and prior to the execution of said promissory note, the said plaintiff and the said George T. Dunlap entered into an agreement with defendant Sunset Lumber Company, acting by and through its agents, E. H. Nash, C. S. Lamb and J. E. Neal, under and by which the said George T. Dunlap agreed to assume and pay the indebtedness theretofore existing in favor of the Sunset Lumber Company, and against the Clayton Advertising Company aggregating an amount in the sum of $4,816.84, in consideration that the Sunset Lumber Company would cause to be transferred to said George T. Dunlap and said plaintiff, one-third of the capital stock of the Clayton Advertising Company, and agreed to execute and deliver to the Sunset Lumber Company the promissory note aforesaid, and to secure the payment of the same agreed to execute and deliver to the said Sunset Lumber Company the deed of

trust referred to in said amended complaint; that on the 7th day of December, 1909, the said Sunset Lumber Company caused to be transferred to the said George T. Dunlap, upon the order of the said plaintiff, and the said George T. Dunlap, one-third of the capital stock of the Clayton Advertising Company, and in consideration of said transfer the said plaintiff and the said George T. Dunlap executed and delivered to defendant, Sunset Lumber Company, the promissory note and deed of trust referred to in said amended complaint; that said promissory note and said deed of trust were received by the said Sunset Lumber Company in settlement of its claim against the Clayton Advertising Company, and the said Sunset Lumber Company, at the request of the said plaintiff and her said husband, George T. Dunlap, released and reassigned to the Clayton Advertising Company all contracts and other securities it then held for the payment of the indebtedness due and owing to it by the Clayton Advertising Company; that the said plaintiff and the said George T. Dunlap acquired the said stock of the Clayton Advertising Company, as a business investment for the said George T. Dunlap, and for the son of the said plaintiff, Emma M. Dunlap; that said promissory note and said deed of trust were not given as security for the debt of the Clayton Advertising Company, but were given in payment of the stock in the Clayton Advertising Company, caused to be transferred to them by the Sunset Lumber Company as aforesaid, and were intended to be the original and absolute obligation of said plaintiff and the said George T. Dunlap, and were received and accepted by said defendant Sunset Lumber Company as such absolute obligation.''

It can hardly be said that there is a conflict in the evidence itself as to the facts of the transaction from which this case arises. The controversy between the parties seems rather to hinge upon the interpretation of the testimony, or, perhaps it would be the more correct to say, upon the nature, in legal effect, of the transaction as it is explained by the uncontroverted or admitted facts of the same.

George T. Dunlap was the only witness called by the plaintiff. Testifying for her or in support of the claims of her complaint, he admitted that the arrangement was that he was to assume and so become liable to the Sunset Company for the payment of the debt due it from the Clayton Com-

pany in consideration of the transfer to him of one-third of the capital stock of said company. He said that, after the proposition had been discussed between him and Mr. Lamb, of the Sunset Company, on several different occasions, and after he had been persuaded that it would be a profitable investment, he submitted the matter to his wife, the plaintiff herein, and explained to her that he could acquire one-third of all the capital stock of the Clayton Company by assuming the payment of the debt due from said company to the Sunset Company, and that the latter company was willing to accept security for its claim against the Clayton Company. He requested the plaintiff to join him in the execution of the note in suit and, as security for the payment thereof, to make and deliver to the Sunset Company a trust-deed to the real property described in the complaint, which was, as before shown, her separate estate, and that she consented to do so upon her understanding of the proposition as so explained to her by him. But a clearer understanding of the nature of the transaction may the better be obtained from George T. Dunlap's version of it in his own language. He testified: "He (Mr. Lamb) proposed to me if some arrangement could be made that security could be given, if I could supply the security for the obligations to the Sunset Lumber Company, that he could arrange that I could have a third interest in this business and be identified with the management of it. That plan was carried out.

"Question by the court:

"You had no interest in the business up to that time?

"A. No, sir, that was the basis on which I was to acquire some interest.

"The Court: Then you signed this note? A. Yes, sir.

"Q. In other words, as a payment for your interest in the business.

"A. No, sir, oh, so far as I was concerned?

"The Court: Yes.

"Q. Stock was issued to you, was there not, at the time you and your wife signed this? (the note).

"A. Stock was issued to me, yes, sir.

"Q. At that time? A. Yes, sir.

"Q. A part of that transaction?

"A. Or immediately afterwards.

"Q. A part of the transaction?

"A. Yes, sir, it was a part of the transaction. . . . I requested Mrs. Dunlap to supply some security; explained to her what the proposition was, and I suggested that she give a trust-deed, or I thought it could be arranged that if she would consent to give a note and deed of trust for property on Adeline Street that it would be satisfactory. . . .

"Q. At the time this note was given by yourself and Mrs. Dunlap, to whom were the shares of the capital stock of the Sunset or the Clayton Adv. Co. delivered?

"A. Well, it was understood that one-third of the stock to be issued should be issued to myself and son."

After thus relating the circumstances of the transaction, Dunlap, during the course of his testimony, later on went over the matter again as follows: "I explained the whole proposition to Mrs. Dunlap, and after having suggested and discussed with Mr. Lamb what security might be provided, I think he reported to me that he believed the security would be satisfactory—in fact, I think he did state that it was satisfactory, and papers were prepared, and while these papers were being prepared, I explained to Mrs. Dunlap what was to be done, and she consented to sign the papers. . . .

"Q. Now, getting back to this transaction, Mr. Dunlap, as I understand it, the agreement was that you would secure this indebtedness of the Clayton Adv. Co. to the Sunset Company?   A. I was to supply security, yes, sir.

"Q. In consideration of that you were to get one-third of the capital stock of the Clayton Adv. Co.?   A. Yes, sir.

"Q. Prior to that time you had not any interest at all in the Clayton Adv. Co.?   A. No, sir.

"Q. You did get that stock, did you?   A. In the way I have explained, yes. . . .

"Q. Why did she (the plaintiff) sign this deed of trust?

"A. Because I requested it.

"Q. Why did you request it?   A. Because I thought there was an opportunity to get hold of an interest in a desirable business for myself and son.

"Q. You desired to get it, did you?   A. Yes, sir.

"Q. And you got it by her signing this?   A. Unfortunately I got it."

Dunlap proceeded to testify that, on the day of the consummation of the deal, he had five hundred shares of the stock purchased by him issued to his son, Robert E. Dunlap,

and the remainder of the stock issued to himself as trustee for the benefit of himself and son. He said that he intended ultimately to transfer all the stock he had secured to his son, "if he was good to me, and the business was good.

"Q. Did you state to your wife, when she signed the papers, you intended to give it to him? A. Yes.

"Q. That was part of it? A. That was the understanding.

"Q. This stock was to go to you, and you were to invest it or keep it for your son? A. That was understood, that the business might afford an opportunity to him, and that as it might seem wise to me he should receive the interest in the company.

"Q. And the purpose of executing this note and deed of trust in reality was to purchase an interest in this business as an investment for your son, is that right? A. The purpose was to give an opportunity for myself and son to take hold of this business with the other people interested. . . . The original understanding was that she (Mrs. Dunlap) was to sign the deed of trust to secure the amount of the Sunset Lumber Company, and in return the Sunset Lumber Company was to cause to be transferred to me one-third of the capital stock. That arrangement was carried out. . . . I represented Mrs. Dunlap through all the transactions, so far as she had anything to do with it."

The foregoing excerpts from the testimony of George T. Dunlap may appear to involve, so far as this opinion is concerned, an unnecessary repetition of his version of the transaction, but they are here thus given for the purpose of showing that, throughout his entire testimony, there was not the slightest variance in the facts and circumstances of the transaction as he understood them and as undoubtedly they occurred. It is true that in one or two instances he was made to say, through leading questions by his attorney, that Mrs. Dunlap executed the note and the trust deed to secure the "antecedent obligations of the Clayton Advertising Company to the Sunset Lumber Company," but this statement involved a mere legal conclusion which could, of course, have no evidentiary force.

The witnesses, Lamb, Neal, and Nash, who, as seen, were officers of the Sunset Company, having authority to transact the usual and ordinary business of said corporation, each gave testimony confirming the conclusion of the trial court

that the transaction involved the sale to Dunlap of a one-third interest, or stock amounting to the same thing, in the Clayton Company and that the making of the note and trust-deed by Mrs. Dunlap was in consideration of the transfer of such interest or stock to her husband.

It is not deemed necessary to present here a minute statement of the testimony of those witnesses. It is considered enough to say that their testimony corroborates in all essential particulars that of George T. Dunlap concerning the circumstances of the transaction, and that it further shows that, upon the completion of the sale to Dunlap, Nash, the general manager of the Sunset Company, and one of the owners of the stock transferred to Dunlap, prepared and delivered to the Clayton Company a statement showing that its account with the Sunset Company had been canceled and closed as a part of the transaction with Dunlap.

That the important findings of the court are well buttressed by the testimony—indeed, by the testimony of Dunlap alone—there appears to us no possible ground for controversy.

Reduced to a simple and concise statement, the transaction, according to Dunlap's own version of it, involved a purchase by him of a one-third interest in the Clayton Company from Lamb, Neal, and Nash, and that, in the place of paying cash therefor, he agreed to and did assume the payment of an indebtedness due from said Clayton Company to the Sunset Lumber Company, with which the vendors of the stock were connected as officers and agents. And the plaintiff, before signing the note and executing the deed of trust in question, was made fully acquainted by her husband with the purpose for which she was to give the security. She was told by Dunlap that he desired to purchase a one-third interest in the Clayton Company as an investment for himself and their son.

If the plaintiff had joined her husband in the execution of the note and made the trust-deed to secure its payment and upon the faith thereof had secured the money with which to pay the Sunset Company the amount of the Clayton Company's indebtedness to it from a third party, wholly disinterested in either of the companies concerned here, and thus had obtained the one-third interest in the Clayton Company, the transaction, so far as either she or her husband is concerned, would be no different in principle from the one which

is disclosed by Dunlap's testimony. And certainly in such case no one would be found to say that the note, so far as the plaintiff was concerned, was not supported by a sufficient consideration.

The entire fabric of the argument of the plaintiff, however, is erected upon the proposition, pressed by her, that the transaction was one with which the Sunset Company had no connection whatsoever, since the negotiations were wholly between George T. Dunlap and the stockholders of the Clayton Company. Thus the theory is educed that, by signing the note and executing the trust-deed, she merely became a surety of the Clayton Company for the extinguishment of its "antecedent obligations" to the Sunset Company. But no such proposition was submitted to the plaintiff by her husband. Besides, neither she nor her husband had any interest in the Clayton Company prior to the consummation of the negotiations whereby he became the owner of a one-third interest therein, and, obviously, there was no sane reason for assuming or guaranteeing the payment of a claim for which neither was in any legal sense or measure liable.

It is true that the stock purchased by Dunlap was owned by Neal, Lamb, and Nash, but these men were not only interested as stockholders and officers of the Clayton Company but were as well connected with and the agents of the defendant corporation. In the transaction with Dunlap, they not only acted for the Clayton Company as a corporation but for themselves as stockholders therein and at the same time they represented the Sunset Company as its agents. And by the consummation of said transaction, they not only released the Clayton Company from its liability for the payment of the debt due from it to the Sunset Company, but also released themselves from their respective proportions of the individual liability resting upon them as owners of stock of the corporation for the payment of said debt. At the same time and by reason of said transaction, they, as agents of the Sunset Company, authorized to represent it in such a transaction, secured ample and satisfactory security for the ultimate extinguishment of a large indebtedness due to it. Thus it is plainly manifest that in said transaction they acted no less for the Sunset Company than for the Clayton Company and for themselves individually. That they had the legal right to

represent these several interests in the transaction, is a proposition which will not be disputed.

Acting, then, for the two corporations and themselves as individuals, they, in effect, said to Dunlap: ''We will transfer to you one-third of the issued capital stock of the Clayton Company if you will pay the latter's indebtedness to the Sunset Company.'' This was the effect of the proposition to which Dunlap assented and which was in effect ultimately consummated by the execution by him of satisfactory security for the payment of the debt and the transfer to him of the one-third of the capital stock of the Clayton Company. And it was the identical proposition submitted by Dunlap to his wife and upon which she consented to execute the note and the trust-deed involved in this controversy.

We can perceive no possible reason for holding that the note, so far as both the plaintiff and her husband are concerned, is not supported by a sufficient consideration. She was, as we have seen, moved to sign the note and to execute the trust-deed in consideration of the transfer to her husband of title to a one-third interest in the Clayton Company. This was undoubtedly a good consideration in law. (Civ. Code, sec. 1605.) The note itself imported a sufficient consideration and the burden was upon the plaintiff to overcome and destroy that presumption by evidence sufficient in probative force to satisfy the jury or the trial judge. (*Keating* v. *Morrissey,* 6 Cal. App. 163, [91 Pac. 677]; *Thorn* v. *Stewart,* 162 Cal. 413, 421, 422, [122 Pac. 1069]; *Adams* v. *Hopkins,* 144 Cal. 19, 36, [77 Pac. 712]; *People* v. *Milner,* 122 Cal. 171, 179, [54 Pac. 833]; *Estes* v. *Ballard,* 22 Cal. App. 344, [134 Pac. 361].) The plaintiff not only failed to dispel that presumption, but by her own proofs seems to have strengthened and sustained it.

Quite obviously the case here is wholly different from the cases of *Chaffee* v. *Browne,* 109 Cal. 211, [41 Pac. 1028]; *Lagomarsino* v. *Giannini,* 146 Cal. 545, [80 Pac. 698], and *Wright* v. *Byrne,* 129 Cal. 616, [62 Pac. 176], all cited by the plaintiff.

In *Chaffee* v. *Browne* it is held that a mortgage given by the wife upon her separate property to secure her husband's antecedent debt, without any new consideration received either by the husband or wife or moving from the creditor, is

a *nudum pactum,* and, therefore, not of binding force upon the wife.

*Lagomarsini* v. *Giannini* is a case where a third party indorsed a demand note long after its execution, and after the death of the maker, "without any new consideration or the relinquishment of any right by the payee," and the court held that an indorsement of a note under such circumstances imposed no obligation upon the indorser.

In *Wright* v. *Byrne* a note was given by the guardian of the person and estate of a minor to evidence an indebtedness contracted by a former guardian of the same minor. The action was against the later guardian and the ward, who, when the action was brought, had attained her majority. The court held that, since the defendant Byrne (the guardian) did not owe the debt for which the note was executed, so far as she was concerned there was no consideration for the note, and that so far as was concerned the defendant Hinckley (the ward), who did not sign the note, she could not be held liable on the theory that the note was executed by her guardian as guardian, for no authority from the probate court was shown for such execution. That case upon the facts is in no particular analogous to the case at bar.

It perhaps ought to be stated that other findings than the one above quoted are challenged by the plaintiff for want of sufficient evidence to sustain them. But, as above intimated, we regard the quoted finding as involving a disposition of the whole ultimate question in this case. Whether, therefore (referring to one of the points thus made), the finding that the Sunset Company, upon the consummation of the sale of the stock to Dunlap, returned and re-assigned to the Clayton Company certain contracts between the latter company and its patrons and which contracts were, down to the time of the sale to Dunlap, held by the Sunset Company as security for the debt due it from the Clayton Company, is or is not supported by evidence, is of no material importance, as said finding is not essential to the support of the judgment. Indeed, we view that finding as of a mere probative and not of an ultimate fact. In other words, that fact, if proved, could have the effect only of tending to prove that the obligations of the Clayton Company to the Sunset Company had been extinguished, which fact, in turn, would, under all the circumstances of the transaction, merely tend to prove,

if anything at all, that Dunlap bought the stock in the Clayton Company upon the terms and conditions claimed by the defendants.

Our conclusion is that the findings essential to the support of the judgment are sufficiently supported by the proofs.

There are no other points calling for special notice.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 1, 1915.